MINOR *v.* HAPPERSETT.

1. The word "citizen" is often used to convey the idea of membership in a nation.

2. In that sense, women, if born of citizen parents within the jurisdiction of the United States, have always been considered citizens of the United States, as much so before the adoption of the fourteenth amendment to the Constitution as since.

3. The right of suffrage was not necessarily one of the privileges or immunities of citizenship before the adoption of the fourteenth amendment, and that amendment does not add to these privileges and immunities. It simply furnishes additional guaranty for the protection of such as the citizen already had.

4. At the time of the adoption of that amendment, suffrage was not coextensive with the citizenship of the States; nor was it at the time of the adoption of the Constitution.

* Young *v.* Martin, 8 Wallace, 354.

5. Neither the Constitution nor the fourteenth amendment made all citizens voters.

6. A provision in a State constitution which confines the right of voting to "*male* citizens of the United States," is no violation of the Federal Constitution. In such a State women have no right to vote.

ERROR to the Supreme Court of Missouri; the case being thus:

The fourteenth amendment to the Constitution of the United States, in its first section, thus ordains:*

"*All* persons born or naturalized in the United States, and subject to the jurisdiction thereof, are *citizens* of the United States, and of the State wherein they reside. No State shall make or enforce any law, which shall abridge the privileges or immunities of citizens of the United States. Nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction, the equal protection of the laws."

And the constitution of the State of Missouri† thus ordains:

"Every *male* citizen of the United States shall be entitled to vote."

Under a statute of the State all persons wishing to vote at any election, must previously have been registered in the manner pointed out by the statute, this being a condition precedent to the exercise of the elective franchise.

In this state of things, on the 15th of October, 1872 (one of the days fixed by law for the registration of voters), Mrs. Virginia Minor, a native born, free, white citizen of the United States, and of the State of Missouri, over the age of twenty-one years, wishing to vote for electors for President and Vice-President of the United States, and for a representative in Congress, and for other officers, at the general election held in November, 1872, applied to one Happersett, the registrar of voters, to register her as a lawful voter, which he refused to do, assigning for cause that she was not

---

* See other sections, *infra*, p. 174.    † Article 2, § 18.

a "male citizen of the United States," but a woman. She thereupon sued him in one of the inferior State courts of Missouri, for wilfully refusing to place her name upon the list of registered voters, by which refusal she was deprived of her right to vote.

The registrar demurred, and the court in which the suit was brought sustained the demurrer, and gave judgment in his favor; a judgment which the Supreme Court affirmed. Mrs. Minor now brought the case here on error.

*Mr. Francis Minor (with whom were Messrs. J. M. Krum and J. B. Henderson), for the plaintiff in error,* went into an elaborate argument, partially based on what he deemed true political views, and partially resting on legal and constitutional grounds. These last seemed to be thus resolvable:

1st. As a *citizen* of the United States, the plaintiff was entitled to any and all the "privileges and immunities" that belong to such position however defined; and as are held, exercised, and enjoyed by other citizens of the United States.

2d. The elective franchise is a "privilege" of citizenship, in the highest sense of the word. It is the privilege preservative of all rights and privileges; and especially of the right of the citizen to participate in his or her government.

3d. The denial or abridgment of this privilege, if it exist at all, must be sought only in the fundamental charter of government,—the Constitution of the United States. If not found there, no inferior power or jurisdiction can legally claim the right to exercise it.

4th. But the Constitution of the United States, so far from recognizing or permitting any denial or abridgment of the privileges of its citizens, expressly declares that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."

5th. It follows that the provisions of the Missouri constitution and registry law before recited, are in conflict with and must yield to the paramount authority of the Constitution of the United States.

*No opposing counsel.*

The CHIEF JUSTICE delivered the opinion of the court.

The question is presented in this case, whether, since the adoption of the fourteenth amendment, a woman, who is a citizen of the United States and of the State of Missouri, is a voter in that State, notwithstanding the provision of the constitution and laws of the State, which confine the right of suffrage to men alone. We might, perhaps, decide the case upon other grounds, but this question is fairly made. From the opinion we find that it was the only one decided in the court below, and it is the only one which has been argued here. The case was undoubtedly brought to this court for the sole purpose of having that question decided by us, and in view of the evident propriety there is of having it settled, so far as it can be by such a decision, we have concluded to waive all other considerations and proceed at once to its determination.

It is contended that the provisions of the constitution and laws of the State of Missouri which confine the right of suffrage and registration therefor to men, are in violation of the Constitution of the United States, and therefore void. The argument is, that as a woman, born or naturalized in the United States and subject to the jurisdiction thereof, is a citizen of the United States and of the State in which she resides, she has the right of suffrage as one of the privileges and immunities of her citizenship, which the State cannot by its laws or constitution abridge.

There is no doubt that women may be citizens. They are persons, and by the fourteenth amendment " all persons born or naturalized in the United States and subject to the jurisdiction thereof" are expressly declared to be " citizens of the United States and of the State wherein they reside." But, in our opinion, it did not need this amendment to give them that position. Before its adoption the Constitution of the United States did not in terms prescribe who should be citizens of the United States or of the several States, yet there were necessarily such citizens without such provision. There cannot be a nation without a people. The very idea of a political community, such as a nation is, implies an

association of persons for the promotion of their general welfare. Each one of the persons associated becomes a member of the nation formed by the association. He owes it allegiance and is entitled to its protection. Allegiance and protection are, in this connection, reciprocal obligations. The one is a compensation for the other; allegiance for protection and protection for allegiance.

For convenience it has been found necessary to give a name to this membership. The object is to designate by a title the person and the relation he bears to the nation. For this purpose the words " subject," " inhabitant," and " citizen " have been used, and the choice between them is sometimes made to depend upon the form of the government. Citizen is now more commonly employed, however, and as it has been considered better suited to the description of one living under a republican government, it was adopted by nearly all of the States upon their separation from Great Britain, and was afterwards adopted in the Articles of Confederation and in the Constitution of the United States. When used in this sense it is understood as conveying the idea of membership of a nation, and nothing more.

To determine, then, who were citizens of the United States before the adoption of the amendment it is necessary to ascertain what persons originally associated themselves together to form the nation, and what were afterwards admitted to membership.

Looking at the Constitution itself we find that it was ordained and established by " the people of the United States,"* and then going further back, we find that these were the people of the several States that had before dissolved the political bands which connected them with Great Britain, and assumed a separate and equal station among the powers of the earth,† and that had by Articles of Confederation and Perpetual Union, in which they took the name of " the United States of America," entered into a firm league of

---

* Preamble, 1 Stat. at Large, 10.
† Declaration of Independence, Ib. 1.

friendship with each other for their common defence, the security of their liberties and their mutual and general welfare, binding themselves to assist each other against all force offered to or attack made upon them, or any of them, on account of religion, sovereignty, trade, or any other pretence whatever.*

Whoever, then, was one of the people of either of these States when the Constitution of the United States was adopted, became *ipso facto* a citizen—a member of the nation created by its adoption. He was one of. the persons associating together to form the nation, and was, consequently, one of its original citizens. As to this there has never been a doubt. Disputes have arisen as to whether or not certain persons or certain classes of persons were part of the people at the time, but never as to their citizenship if they were.

Additions might always be made to the citizenship of the United States in two ways: first, by birth, and second, by naturalization. This is apparent from the Constitution itself, for it provides† that "no person except a natural-born citizen, or a citizen of the United States at the time of the adoption of the Constitution, shall be eligible to the office of President,"‡ and that Congress shall have power "to establish a uniform rule of naturalization." Thus new citizens may be born or they may be created by naturalization.

The Constitution does not, in words, say who shall be natural-born citizens. Resort must be had elsewhere to ascertain that. At common-law, with the nomenclature of which the framers of the Constitution were familiar, it was never doubted that all children born in a country of parents who were its citizens became themselves, upon their birth, citizens also. These were natives, or natural-born citizens, as distinguished from aliens or foreigners. Some authorities go further and include as citizens children born within the jurisdiction without reference to the citizenship of their

---

* Articles of Confederation, § 3, 1 Stat. at Large, 4.
† Article 2, § 1.                    ‡ Article 1, § 8.

parents. As to this class there have been doubts, but never as to the first. For the purposes of this case it is not necessary to solve these doubts. It is sufficient for everything we have now to consider that all children born of citizen parents within the jurisdiction are themselves citizens. The words "all children" are certainly as comprehensive, when used in this connection, as "all persons," and if females are included in the last they must be in the first. That they are included in the last is not denied. In fact the whole argument of the plaintiffs proceeds upon that idea.

Under the power to adopt a uniform system of naturalization Congress, as early as 1790, provided "that any alien, being a free white person," might be admitted as a citizen of the United States, and that the children of such persons so naturalized, dwelling within the United States, being under twenty-one years of age at the time of such naturalization, should also be considered citizens of the United States, and that the children of citizens of the United States that might be born beyond the sea, or out of the limits of the United States, should be considered as natural-born citizens.* These provisions thus enacted have, in substance, been retained in all the naturalization laws adopted since. In 1855, however, the last provision was somewhat extended, and all persons theretofore born or thereafter to be born out of the limits of the jurisdiction of the United States, whose fathers were, or should be at the time of their birth, citizens of the United States, were declared to be citizens also.†

As early as 1804 it was enacted by Congress that when any alien who had declared his intention to become a citizen in the manner provided by law died before he was actually naturalized, his widow and children should be considered as citizens of the United States, and entitled to all rights and privileges as such upon taking the necessary oath;‡ and in 1855 it was further provided that any woman who might lawfully be naturalized under the existing laws, married, or

---

\* 1 Stat. at Large, 103.          † 10 Id. 604.
‡ 2 Id. 293.

who should be married to a citizen of the United States, should be deemed and taken to be a citizen.*

From this it is apparent that from the commencement of the legislation upon this subject alien women and alien minors could be made citizens by naturalization, and we think it will not be contended that this would have been done if it had not been supposed that native women and native minors were already citizens by birth.

But if more is necessary to show that women have always been considered as citizens the same as men, abundant proof is to be found in the legislative and judicial history of the country.  Thus, by the Constitution, the judicial power of the United States is made to extend to controversies between citizens of different States.  Under this it has been uniformly held that the citizenship necessary to give the courts of the United States jurisdiction of a cause must be affirmatively shown on the record.  Its existence as a fact may be put in issue and tried.  If found not to exist the case must be dismissed.  Notwithstanding this the records of the courts are full of cases in which the jurisdiction depends upon the citizenship of women, and not one can be found, we think, in which objection was made on that account.  Certainly none can be found in which it has been held that women could not sue or be sued in the courts of the United States. Again, at the time of the adoption of the Constitution, in many of the States (and in some probably now) aliens could not inherit or transmit inheritance.  There are a multitude of cases to be found in which the question has been presented whether a woman was or was not an alien, and as such capable or incapable of inheritance, but in no one has it been insisted that she was not a citizen because she was a woman.  On the contrary, her right to citizenship has been in all cases assumed.  The only question has been whether, in the particular case under consideration, she had availed herself of the right.

In the legislative department of the government similar

---

* 10 Stat. at Large, 604.

proof will be found. Thus, in the pre-emption laws,* a widow, "being a citizen of the United States," is allowed to make settlement on the public lands and purchase upon the terms specified, and women, "being citizens of the United States," are permitted to avail themselves of the benefit of the homestead law.†

Other proof of like character might be found, but certainly more cannot be necessary to establish the fact that sex has never been made one of the elements of citizenship in the United States. In this respect men have never had an advantage over women. The same laws precisely apply to both. The fourteenth amendment did not affect the citizenship of women any more than it did of men. In this particular, therefore, the rights of Mrs. Minor do not depend upon the amendment. She has always been a citizen from her birth, and entitled to all the privileges and immunities of citizenship. The amendment prohibited the State, of which she is a citizen, from abridging any of her privileges and immunities as a citizen of the United States; but it did not confer citizenship on her. That she had before its adoption.

If the right of suffrage is one of the necessary privileges of a citizen of the United States, then the constitution and laws of Missouri confining it to men are in violation of the Constitution of the United States, as amended, and consequently void. The direct question is, therefore, presented whether all citizens are necessarily voters.

The Constitution does not define the privileges and immunities of citizens. For that definition we must look elsewhere. In this case we need not determine what they are, but only whether suffrage is necessarily one of them.

It certainly is nowhere made so in express terms. The United States has no voters in the States of its own creation. The elective officers of the United States are all elected directly or indirectly by State voters. The members of the House of Representatives are to be chosen by the people of

* 5 Stat. at Large, 455, § 10.          † 12 Id. 392.

the States, and the electors in each State must have the qualifications requisite for electors of the most numerous branch of the State legislature.*   Senators are to be chosen by the legislatures of the States, and necessarily the members of the legislature required to make the choice are elected by the voters of the State.†   Each State must appoint in such manner, as the legislature thereof may direct, the electors to elect the President and Vice-President.‡   The times, places, and manner of holding elections for Senators and Representatives are to be prescribed in each State by the legislature thereof; but Congress may at any time, by law, make or alter such regulations, except as to the place of choosing Senators.§   It is not necessary to inquire whether this power of supervision thus given to Congress is sufficient to authorize any interference with the State laws prescribing the qualifications of voters, for no such interference has ever been attempted.   The power of the State in this particular is certainly supreme until Congress acts.

The amendment did not add to the privileges and immunities of a citizen.   It simply furnished an additional guaranty for the protection of such as he already had.   No new voters were necessarily made by it.   Indirectly it may have had that effect, because it may have increased the number of citizens entitled to suffrage under the constitution and laws of the States, but it operates for this purpose, if at all, through the States and the State laws, and not directly upon the citizen.

It is clear, therefore, we think, that the Constitution has not added the right of suffrage to the privileges and immunities of citizenship as they existed at the time it was adopted. This makes it proper to inquire whether suffrage was coextensive with the citizenship of the States at the time of its adoption.   If it was, then it may with force be argued that suffrage was one of the rights which belonged to citizenship, and in the enjoyment of which every citizen must be pro-

---

* Constitution, Article 1, § 2.         † Ib. Article 1, § 3.

‡ Ib. Article 2, § 2.                    § Ib. Article 1, § 4.

tected. But if it was not, the contrary may with propriety be assumed.

When the Federal Constitution was adopted, all the States, with the exception of Rhode Island and Connecticut, had constitutions of their own. These two continued to act under their charters from the Crown. Upon an examination of those constitutions we find that in no State were all citizens permitted to vote. Each State determined for itself who should have that power. Thus, in New Hampshire, " every male inhabitant of each town and parish with town privileges, and places unincorporated in the State, of twenty-one years of age and upwards, excepting paupers and persons excused from paying taxes at their own request," were its voters; in Massachusetts " every male inhabitant of twenty-one years of age and upwards, having a freehold estate within the commonwealth of the annual income of three pounds, or any estate of the value of sixty pounds;" in Rhode Island " such as are admitted free of the company and society " of the colony; in Connecticut such persons as had " maturity in years, quiet and peaceable behavior, a civil conversation, and forty shillings freehold or forty pounds personal estate," if so certified by the selectmen; in New York " every male inhabitant of full age who shall have personally resided within one of the counties of the State for six months immediately preceding the day of election . . . if during the time aforesaid he shall have been a freeholder, possessing a freehold of the value of twenty pounds within the county, or have rented a tenement therein of the yearly value of forty shillings, and been rated and actually paid taxes to the State;" in New Jersey " all inhabitants . . . of full age who are worth fifty pounds, proclamation-money, clear estate in the same, and have resided in the county in which they claim a vote for twelve months immediately preceding the election;" in Pennsylvania " every freeman of the age of twenty-one years, having resided in the State two years next before the election, and within that time paid a State or county tax which shall have been assessed at least six months before the election;" in

Delaware and Virginia "as exercised by law at present;" in Maryland "all freemen above twenty-one years of age having a freehold of fifty acres of land in the county in which they offer to vote and residing therein, and all freemen having property in the State above the value of thirty pounds current money, and having resided in the county in which they offer to vote one whole year next preceding the election;" in North Carolina, for senators, "all freemen of the age of twenty-one years who have been inhabitants of any one county within the State twelve months immediately preceding the day of election, and possessed of a freehold within the same county of fifty acres of land for six months next before and at the day of election," and for members of the house of commons "all freemen of the age of twenty-one years who have been inhabitants in any one county within the State twelve months immediately preceding the day of any election, and shall have paid public taxes;" in South Carolina "every free white man of the age of twenty-one years, being a citizen of the State and having resided therein two years previous to the day of election, and who hath a freehold of fifty acres of land, or a town lot of which he hath been legally seized and possessed at least six months before such election, or (not having such freehold or town lot), hath been a resident within the election district in which he offers to give his vote six months before said election, and hath paid a tax the preceding year of three shillings sterling towards the support of the government;" and in Georgia such "citizens and inhabitants of the State as shall have attained to the age of twenty-one years, and shall have paid tax for the year next preceding the election, and shall have resided six months within the county."

In this condition of the law in respect to suffrage in the several States it cannot for a moment be doubted that if it had been intended to make all citizens of the United States voters, the framers of the Constitution would not have left it to implication. So important a change in the condition of citizenship as it actually existed, if intended, would have been expressly declared.

But if further proof is necessary to show that no such change was intended, it can easily be found both in and out of the Constitution. By Article 4, section 2, it is provided that " the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States." If suffrage is necessarily a part of citizenship, then the citizens of each State must be entitled to vote in the several States precisely as their citizens are. This is more than asserting that they may change their residence and become citizens of the State and thus be voters. It goes to the extent of insisting that while retaining their original citizenship they may vote in any State. This, we think, has never been claimed. And again, by the very terms of the amendment we have been considering (the fourteenth), " Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice-President of the United States, representatives in Congress, the executive and judicial officers of a State, or the members of the legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age and citizens of the United States, or in any way abridged, except for participation in the rebellion, or other crimes, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State." Why this, if it was not in the power of the legislature to deny the right of suffrage to some male inhabitants? And if suffrage was necessarily one of the absolute rights of citizenship, why confine the operation of the limitation to male inhabitants? Women and children are, as we have seen, " persons." They are counted in the enumeration upon which the apportionment is to be made, but if they were necessarily voters because of their citizenship unless clearly excluded, why inflict the penalty for the exclusion of males alone? Clearly, no such form of words would have been

selected to express the idea here indicated if suffrage was the absolute right of all citizens.

And still again, after the adoption of the fourteenth amendment, it was deemed necessary to adopt a fifteenth, as follows: "The right of citizens of the United States to vote shall not be denied or abridged by the United States, or by any State, on account of race, color, or previous condition of servitude." The fourteenth amendment had already provided that no State should make or enforce any law which should abridge the privileges or immunities of citizens of the United States. If suffrage was one of these privileges or immunities, why amend the Constitution to prevent its being denied on account of race, &c.? Nothing is more evident than that the greater must include the less, and if all were already protected why go through with the form of amending the Constitution to protect a part?

It is true that the United States guarantees to every State a republican form of government.* It is also true that no State can pass a bill of attainder,† and that no person can be deprived of life, liberty, or property without due process of law.‡ All these several provisions of the Constitution must be construed in connection with the other parts of the instrument, and in the light of the surrounding circumstances.

The guaranty is of a republican form of government. No particular government is designated as republican, neither is the exact form to be guaranteed, in any manner especially designated. Here, as in other parts of the instrument, we are compelled to resort elsewhere to ascertain what was intended.

The guaranty necessarily implies a duty on the part of the States themselves to provide such a government. All the States had governments when the Constitution was adopted. In all the people participated to some extent, through their representatives elected in the manner specially provided.

---

* Constitution, Article 4, § 4.      † Ib. Article 1, § 10.
‡ Ib. Amendment 5.

These governments the Constitution did not change. They were accepted precisely as they were, and it is, therefore, to be presumed that they were such as it was the duty of the States to provide. Thus we have unmistakable evidence of what was republican in form, within the meaning of that term as employed in the Constitution.

As has been seen, all the citizens of the States were not invested with the right of suffrage. In all, save perhaps New Jersey, this right was only bestowed upon men and not upon all of them. Under these circumstances it is certainly now too late to contend that a government is not republican, within the meaning of this guaranty in the Constitution, because women are not made voters.

.The same may be said of the other provisions just quoted. Women were excluded from suffrage in nearly all the States by the express provision of their constitutions and laws. If that had been equivalent to a bill of attainder, certainly its abrogation would not have been left to implication. Nothing less than express language would have been employed to effect so radical a change. So also of the amendment which declares that no person shall be deprived of life, liberty, or property without due process of law, adopted as it was as early as 1791. If suffrage was intended to be included within its obligations, language better adapted to express that intent would most certainly have been employed. The right of suffrage, when granted, will be protected. He who has it can only be deprived of it by due process of law, but in order to claim protection he must first show that he has the right.

But we have already sufficiently considered the proof found upon the inside of the Constitution. That upon the outside is equally effective.

The Constitution was submitted to the States for adoption in 1787, and was ratified by nine States in 1788, and finally by the thirteen original States in 1790. Vermont was the first new State admitted to the Union, and it came in under a constitution which conferred the right of suffrage only upon men of the full age of twenty-one years, having resided

in the State for the space of one whole year next before the election, and who were of quiet and peaceable behavior. This was in 1791.   The next year, 1792, Kentucky followed with a constitution confining the right of suffrage to free male citizens of the age of twenty-one years who had resided in the State two years or in the county in which they offered to vote one year next before the election.   Then followed Tennessee, in 1796, with voters of freemen of the age of twenty-one years and upwards, possessing a freehold in the county wherein they may vote, and being inhabitants of the State or freemen being inhabitants of any one county in the State six months immediately preceding the day of election. But we need not particularize further.   No new State has ever been admitted to the Union which has conferred the right of suffrage upon women, and this has never been considered a valid objection to her admission.   On the contrary, as is claimed in the argument, the right of suffrage was withdrawn from women as early as 1807 in the State of New Jersey, without any attempt to obtain the interference of the United States to prevent it.   Since then the governments of the insurgent States have been reorganized under a requirement that before their representatives could be admitted to seats in Congress they must have adopted new constitutions, republican in form.   In no one of these constitutions was suffrage conferred upon women, and yet the States have all been restored to their original position as States in the Union.

Besides this, citizenship has not in all cases been made a condition precedent to the enjoyment of the right of suffrage. Thus, in Missouri, persons of foreign birth, who have declared their intention to become citizens of the United States, may under certain circumstances vote.   The same provision is to be found in the constitutions of Alabama, Arkansas, Florida, Georgia, Indiana, Kansas, Minnesota, and Texas.

Certainly, if the courts can consider any question settled, this is one.   For nearly ninety years the people have acted upon the idea that the Constitution, when it conferred citizenship, did not necessarily confer the right of suffrage.   If

uniform practice long continued can settle the construction of so important an instrument as the Constitution of the United States confessedly is, most certainly it has been done here. Our province is to decide what the law is, not to declare what it should be.

We have given this case the careful consideration its importance demands. If the law is wrong, it ought to be changed; but the power for that is not with us. The arguments addressed to us bearing upon such a view of the subject may perhaps be sufficient to induce those having the power, to make the alteration, but they ought not to be permitted to influence our judgment in determining the present rights of the parties now litigating before us. No argument as to woman's need of suffrage can be considered. We can only act upon her rights as they exist. It is not for us to look at the hardship of withholding. Our duty is at an end if we find it is within the power of a State to withhold.

Being unanimously of the opinion that the Constitution of the United States does not confer the right of suffrage upon any one, and that the constitutions and laws of the several States which commit that important trust to men alone are not necessarily void, we

AFFIRM THE JUDGMENT.