BLAIR v. SILVER PEAK MINES et al.

(Circuit Court, D. Nevada. March 27, 1899.)

No. 642.

1. EQUITY PLEADING — EFFECT OF DENIAL FOR WANT OF KNOWLEDGE OR INFORMATION.

Equity rule 41 does not require the testimony of two witnesses, or its equivalent, to support an allegation in a bill, though denied by a sworn answer, where such denial is made for want of sufficient knowledge, information, or belief on the part of defendant as to the fact alleged; the only effect of such denial being to require some proof on the point.

2. JURISDICTION OF FEDERAL COURT—PROOF OF CITIZENSHIP.

An allegation of the citizenship of complainant, made for jurisdictional purposes, and denied by defendant only for want of sufficient knowledge, information, or belief as to the fact, is sufficiently established prima facie by proof that complainant is, and has been for 70 years, a resident of a certain town in the state of which he is alleged to be a citizen, and that he owns a house in such town, in which he resides and has his business office.

3. MORTGAGE—ESTOPPEL TO FORECLOSE—SUBSEQUENT PURCHASE OF PROPERTY.

Complainant owned certain mining property, which he conveyed to a corporation, in which he became the largest stockholder, taking back a mortgage for purchase money. Subsequently the corporation entered into a contract with a third person for the sale of the property, by which it agreed, on the making of the stipulated payments, to convey the property to him free of incumbrance. Held, that such facts did not estop complainant, as against the purchaser, from foreclosing the mortgage, it further appearing that the purchaser had failed to make the payments agreed upon, which would have enabled the corporation to discharge the mortgage.

4. REHEARING IN EQUITY—REHEARING IN ABSENCE OF DEFENDANT—REQUISITES OF SHOWING.

To justify a court of equity in granting a rehearing after decree on the ground that through inadvertence or excusable neglect the defendant was not present or represented by counsel on the hearing, in addition to a sufficient legal excuse for such absence, it must be shown that defendant had a good and meritorious defense, or at least that from the evidence the court might, upon argument, reach a different conclusion on the merits.

On Petition for Rehearing. Denied.

For former opinion, see 84 Fed. 737.

Rush Taggart (M. A. Murphy, of counsel), for complainant.

Reddy, Campbell & Metson, for defendant L. J. Hanchett.

HAWLEY, District Judge (orally). On the 21st of July, 1897, complainant commenced this suit to foreclose a mortgage given by the

defendant corporation to complainant to secure the payment of seven bonds, each bearing date October 1, 1879, and becoming due and payable at different times, the last becoming due October 1, 1883, the whole amount aggregating the sum of $204,205.73. Upon these bonds and mortgage, payments and credits amounting to $21,000, or thereabouts, have been at different times made, the last credit being on the 21st day of April, 1896. L. J. Hanchett was made a party to the suit by the following averment in the complaint:

"That the defendant L. J. Hanchett has, or claims to have, some interest in or claim upon the said premises, or some part thereof, which claim or interest is unknown to this complainant, and which interest or claim is subsequent to and subject to the lien of this complainant's mortgage."

Thereafter, on the 2d day of October, 1897, the said L. J. Hanchett appeared, and interposed a demurrer to plaintiff's complaint on several grounds, which was overruled by the court. Blair v. Silver Peak Mines, 84 Fed. 737. On the 6th day of June, 1898, defendant Hanchett appeared and filed an answer to plaintiff's bill of complaint, to which a replication was in due time filed by the complainant. Thereafter the cause, being at issue, was set for trial on the 21st of November, 1898. The Silver Peak Mines confessed judgment on the original bill September 13, 1897, and on the amended bill February 17, 1898. On the day set for trial, counsel for Hanchett failed to appear, and the case was heard upon the testimony previously taken by deposition. Judgment and decree of foreclosure were entered in favor of complainant for the sum of $573,978.71, that being the amount of principal and interest then due upon said bonds and mortgage. On December 5, 1898, defendant Hanchett filed a petition for rehearing, upon the following grounds:

"(1) That the proofs fail to establish that the complainant in this suit was, at the time of the commencement of this action, a citizen of the state of New Jersey, although the allegation of the bill to that effect was denied in the answer of this defendant, and for that reason this court was without jurisdiction to enter any decree herein other than a decree dismissing said amended bill. (2) That the diverse citizenship of the parties to this suit was not proved, although put in issue by said answer, and for that reason this court was without jurisdiction to enter the decree herein in complainant's favor. (3) That said decree is erroneous because the alleged cause of action upon which this suit is founded was at the time of the commencement of this suit, as against this defendant, barred by limitation. (4) That said decree is erroneous because the alleged cause of action upon which this suit is founded was at the time of the commencement of this suit, as against this defendant, barred by time and laches, and by the rules of equity and equity practice, and because the same was and is stale, and not enforceable in equity. (5) That said decree is erroneous because the proofs herein show that the complainant is estopped by his ownership of said property, his actions, conduct, and representations, from enforcing said alleged mortgage against the said L. J. Hanchett. (6) That the said decree is erroneous because the evidence shows that said alleged mortgage is extinguished by lapse of time, as well under the laws of the state of New York, where the same was made, as under the laws of this state, and under the general rules of equity. (7) That said decree is erroneous because the proofs are insufficient to prove the execution, delivery, and nonpayment of the alleged bonds and mortgages upon which said suit is founded. (8) That said decree is erroneous because upon the pleadings and proofs a decree should, in equity and good conscience, be entered herein in defendant's favor, dismissing the said amended bill of complaint. And this defendant further respectfully petitions your honors to set aside and vacate

said decree and grant a rehearing upon the ground and for the reason that by reason of inadvertence, and surprise which ordinary prudence could not have guarded against, the hearing in this suit was had in his absence, and in the absence of all his solicitors and counsel; and because he was, for the reasons above stated, unrepresented at said hearing, and the case was not argued and presented on his behalf; and for the reason that the failure of his counsel to be present at said hearing resulted from their misapprehension, surprise, inadvertence, and excusable neglect, which, in equity and good conscience, should be relieved against upon this petition."

Upon the oral argument the attention of counsel was called to the fact that if the court should be of opinion that a sufficient legal excuse was made to justify the court, on that ground alone, in granting a rehearing, it ought not to prevail unless defendant Hanchett could show that he had a good and meritorious defense to the suit, or, at least, that from the testimony filed herein it should appear upon argument that the court might reach a different result upon the merits of the case. With this general statement we proceed to an examination of the points discussed by counsel.

1. In so far as the grounds urged by defendant are based upon the statute of limitations, it will not again be argued, it having been fully discussed and decided in Blair v. Silver Peak Mines, supra.

2. It is claimed by the defendant that this court has no jurisdiction of this suit. Without stopping to examine whether the defendant has waived or abandoned his right to raise this question because he did not interpose a plea in abatement to the jurisdiction before filing his answer to the bill, as claimed by the complainant, the question of jurisdiction will be considered on its merits. In the bill of complaint it is alleged:

"That the complainant, John I. Blair, is now, and during all the time and times hereinafter mentioned was, and is, a resident and citizen of Blairstown, in the state of New Jersey, and is not a citizen or resident of the state of Nevada; * * * that L. J. Hanchett is a citizen and resident of the city of Sacramento, county of Sacramento, state of California; * * * that this suit is of a civil nature, and that the matter or amount in dispute exceeds the sum or value of $10,000, exclusive of interest and costs; that the controversy herein is between citizens and residents of different states, to wit, between John I. Blair, a citizen and resident of Blairstown, state of New Jersey, and the Silver Peak Mines, a corporation duly organized and existing under and by virtue of the laws of the state of New York, * * * being a resident and citizen of said state of New York; that the property mentioned and referred to in the mortgage * * * is situated in and near the town of Silver Peak, county of Esmeralda, state of Nevada."

The answer of L. J. Hanchett upon this point alleges:

"That he has no knowledge, information, or belief sufficient to enable him to answer the allegation of said amended bill, * * * and, placing his denial upon that ground, denies that the complainant at any of said times was, or now is, a resident or citizen of Blairstown, N. J., or a citizen or resident of New Jersey at all."

The contention of the defendant Hanchett that, inasmuch as the complainant did not waive an answer under oath, and that, he having answered under oath that complainant is not a citizen of the state of New Jersey, the complainant must, under equity rule 41, produce two witnesses, or one witness and very strong circumstances corroborating him, in order to overthrow the allegation in defendant's

answer, is wholly devoid of merit. The equity rule relied upon can only be invoked where there is a direct, positive, and unequivocal denial, in the answer, of the allegations in the bill, which the defendant is called upon to answer. It has no application to a denial in the answer which is made without any knowledge, information, or belief as to the facts. This is too clear for argument, or citation of authorities. The only effect of the denial is to compel the complainant to make some proof upon the point. It is argued that the evidence in this case is silent upon the question of the citizenship of the complainant. It is admitted that the testimony shows that at the time of the bringing of this suit he was, and for a period of about 70 years prior thereto had continuously been, and is now, a resident of Blairstown, in the state of New Jersey. But the contention of defendant Hanchett is that mere residence does not constitute citizenship. It has been universally held in removal and other cases that an averment as to the residence of the parties is not the equivalent of an averment of citizenship for the purpose of giving the national courts jurisdiction. Tinsley v. Hoot, 3 C. C. A. 612, 53 Fed. 682; Craswell v. Belanger, 6 C. C. A. 1, 56 Fed. 529; Robertson v. Cease, 97 U. S. 646; Grace v. Insurance Co., 109 U. S. 278, 3 Sup. Ct. 207; Everhart v. Huntsville College, 120 U. S. 223, 7 Sup. Ct. 555; Menard v. Goggan, 121 U. S. 253, 7 Sup. Ct. 873; Cameron v. Hodges, 127 U. S. 322, 8 Sup. Ct. 1154; Anderson v. Watt, 138 U. S. 694, 702, 11 Sup. Ct. 449; Wolfe v. Insurance Co., 148 U. S. 389, 13 Sup. Ct. 602. But the citizenship of complainant is properly alleged in the bill of complaint. This allegation in the bill could, if assailed, be proven by any facts which, in legal intendment, constitute citizenship. In addition to the admitted fact that complainant has been a resident of Blairstown for 70 years, it affirmatively appears from the testimony that he owned a house and transacted his business there; that he used the house as a business office and as a dwelling. It was, therefore, his home,—his domicile. Do not these undisputed facts establish prima facie that complainant is a citizen as well as a resident of New Jersey? Is not such a statement, as to the facts, equivalent to a direct and positive declaration that Blair was a citizen of the state of New Jersey? Of what state is Blair a citizen? From the pleadings and evidence in this suit there can be but one answer, viz. New Jersey. Does it not clearly and satisfactorily appear that he intended to remain there permanently? From the fact of his long residence, and from the name of the town where he lives, it might be fairly presumed that he was the father that gave his name to the child. The general rule is well settled that a citizen is one who owes the government allegiance, service, and money by way of taxation, and to whom the government in turn grants and guaranties liberty of person and of conscience, the right of acquiring and possessing property, of suit and of defense, and security in person, estate, and reputation. Knox v. Greenleaf, 4 Dall. 360; Gassies v. Ballon, 6 Pet. 761; Shelton v. Tiffin, 6 How. 163, 185; Sheppard v. Graves, 14 How. 512, 513; Minor v. Happersett, 21 Wall. 162, 166; U. S. v. Cruikshank, 92 U. S. 542; Anderson v. Watt, 138 U. S. 695, 706, 11 Sup. Ct. 449; Boyd v. Nebraska, 143 U. S. 135, 159, 12 Sup. Ct. 375; Gordon v. Bank, 144 U. S.

97, 103, 12 Sup. Ct. 657; Marks v. Marks, 75 Fed. 321. It is also well settled that a state may deny all her political rights to an individual, and he yet be a citizen. The right of office and suffrage are political purely. A citizen enjoys civil rights. Id. 328; Burnham v. Rangeley, 1 Woodb. & M. 7, Fed. Cas. No. 2,176; Catlett v. Insurance Co., 1 Paine, 594, Fed. Cas. No. 2,517; Minor v. Happersett, 21 Wall. 162; Blanck v. Pausch, 113 Ill. 60, 64; State v. Fairlamb, 121 Mo. 138, 150, 25 S. W. 895. I am of opinion that the facts and circumstances testified to by the witnesses in this case sufficiently establish the fact that the complainant, John I. Blair, was, at the time of the commencement of this suit, a citizen of the state of New Jersey, and are therefore sufficient to invest this court with jurisdiction.

In Shelton v. Tiffin, supra, it was held that an allegation of the citizenship of the parties must be made, but the proof of the citizenship, when denied, might be satisfactorily established, although the privileges and rights of a citizen may not be shown to have been claimed or exercised by the individual. The facts were that Shelton and wife became residents of Louisiana in 1840, more than two years before the commencement of the suit; that, since their residence commenced, they had been absent from the state only once, a short time, on a visit to a watering place in Mississippi; that they resided the greater part of the time on the plantation which was in controversy, cultivating and improving it. Upon these facts the court said:

"Where an individual has resided in a state for a considerable time, being engaged in the prosecution of business, he may well be presumed to be a citizen of such state, unless the contrary appear. And this presumption is strengthened where the individual lives on a plantation, and cultivates it with a large force, as in the case of Shelton, claiming and improving the property as his own. On a change of domicile from one state to another, citizenship may depend upon the intention of the individual. But this intention may be shown more satisfactorily by acts than declarations. An exercise of the right of suffrage is conclusive on the subject, but acquiring a right of suffrage, accompanied by acts which show a permanent location, unexplained, may be sufficient. The facts proved in this case authorize the conclusion that Shelton was a citizen of Louisiana, within the act of congress, so as to give jurisdiction to the circuit court."

In Anderson v. Watt, supra, cited and relied upon by the defendant, the court, in referring to the facts constituting citizenship, said:

"The place where a person lives is taken to be his domicile until facts adduced establish the contrary; and a domicile, when acquired, is presumed to continue until it is shown to have been changed."

In Marks v. Marks, supra, there is an elaborate discussion, and a copious citation of authorities, concerning citizenship in many different phases. In the course of the opinion, Clark, J., said:

"Citizenship, in relation to the federal judiciary, must be of that kind which identifies the party with some particular state of which he is a member. Butler v. Farnsworth (1821) 4 Wash. C. C. 101, Fed. Cas. No. 2,240; Morris v. Gilmer, 129 U. S. 315, 9 Sup. Ct. 289; Mitchell v. U. S., 21 Wall. 350. To constitute citizenship of a state in relation to the judiciary act requires: First, residence within such state; and, second, an intention that such residence shall be permanent. In this sense state citizenship means the same thing as domicile in its general acceptation. The act of residence does not alone constitute the domicile of a party, but it is the fact of residence, accompanied by an intention of remaining, which constitutes domicile. The distinction between

domicile and mere residence may be shortly put as that between residence animo manendi and residence animo revertendi [citing cases]. Mere residence may be for a transient purpose,—as for business,—for a fixed period, or limited by an expected future event, upon the happening of which there is a purpose to return or remove. The two elements of residence, and the intention that such residence shall be permanent, must concur to make citizenship."

In Morris v. Gilmer, 129 U. S. 315, 328, 9 Sup. Ct. 293, the court held, upon the facts disclosed, that Gilmer was not a citizen of the state of Tennessee, as claimed in his complaint, but had transferred his residence from Alabama for the sole purpose of bringing the suit in the national court, thereby committing a fraud upon the law. But in the course of the opinion the court said:

"It is true, as contended by the defendant, that a citizen of the United States can instantly transfer his citizenship from one state to another (Cooper v. Galbraith, 3 Wash. C. C. 546, 554, Fed. Cas. No. 3,193), and that his right to sue in the courts of the United States is none the less because his change of domicile was induced by the purpose, whether avowed or not, of invoking, for the protection of his rights, the jurisdiction of a federal court. As said by Mr. Justice Story, in Briggs v. French, 2 Sumn. 251, 256, Fed. Cas. No. 1,871, 'if the new citizenship is really and truly acquired, his right to sue is a legitimate, constitutional, and legal consequence, not to be impeached by the motive of his removal.' Insurance Co. v. Broughton, 109 U. S. 121, 125, 3 Sup. Ct. 99; Jones v. League, 18 How. 76, 81. There must be an actual, not pretended, change of domicile; in other words, the removal must be 'a real one, animo manendi, and not merely ostensible.' Case v. Clarke, 5 Mason, 70, Fed. Cas. No. 2,490. The intention and the act must concur in order to effect such a change of domicile as constitutes a change of citizenship. In Ennis v. Smith, 14 How. 400, 423, it was said that 'a removal which does not contemplate an absence from the former domicile for an indefinite and uncertain time is not a change of it,' and that, while it was difficult to lay down any rule under which every instance of residence could be brought which may make a domicile of choice, 'there must be, to constitute it, actual residence in the place, with the intention that it is to be a principal and permanent residence.'"

3. Numerous other points have been discussed by counsel, and will be grouped together. It is deemed sufficient to state that it devolves upon Hanchett to establish the affirmative allegations in his answer by a preponderance of evidence. This, in my opinion, he has failed to do. He relies solely upon his answer, and the testimony offered by the complainant, and claims that the cross-examination of complainant's witnesses proves his case, but he has failed to convince the mind of the court that his contention is correct. On the other hand, the court is of opinion that there are no facts proven in this case sufficient to establish any fraud or collusion between Blair and the Silver Peak Mines with reference to the Blair mortgage, sought to be foreclosed herein. There was no fraud in the execution of the mortgage. It was duly executed in New York, and properly recorded in Esmeralda county, state of Nevada, long prior to the execution of any agreement between Hanchett and the Silver Peak Mines, and existed of record at that date. It is not shown that the mortgage debt has ever been paid, or any part thereof, save and except the amounts credited in the judgment and decree of foreclosure herein. Blair is not shown to have been a party to the execution of any agreements that existed, or now exist, if any, between the corporation and Hanchett. It is not shown that Blair ever committed any act, by word or by deed, which would estop him from foreclosing the mort-

gage.    The fact that Blair was the original owner of the mines at Silver Peak, and that he conveyed the property and premises to the Silver Peak Mines for the more convenient working and managing of the same, certainly does not estop him from foreclosing his mortgage upon the property.    This is a matter of daily occurrence.    The fact that Blair is a large stockholder, owning nearly all the stock of the Silver Peak Mines, and that the other stockholders are his relatives or near friends, who would naturally conform to his wishes in the management and control of the corporation, does not estop him from the foreclosure of his mortgage.    Blair is not either a director or officer of the corporation.    He has not been guilty of any laches of which Hanchett can complain.    It may fairly be presumed that, if Hanchett had kept his agreements with the corporation, and paid the money that he agreed to pay by the terms and conditions thereof, within the time specified, the corporation could and would have paid the mortgage debt due to Blair, and would thus have been placed in a position where it could and would have been able to execute and deliver to Hanchett a good and sufficient deed of the property "free and clear of all incumbrances," as it agreed to do.    But if it should be conceded that the corporation has not kept or performed all the covenants on its part agreed to be performed with Hanchett, it would not by any means follow, from any evidence in this case, that Blair could not foreclose his mortgage against Hanchett.    Hanchett's remedy, if any he has, would be by bringing an action against the corporation for damages for its failure to comply with its agreements, and in such an action he would have to prove that he had fully complied with all the covenants and agreements on his part to be performed; or that he had been prevented from so doing by the acts and conduct of the corporation.    Moreover, the testimony in this case is to the effect that Hanchett's right to purchase the property from the corporation under the agreements which he claims gave him an equitable title to the property expired August 15, 1896, without any compliance upon his part therewith, and that there never has been any extension of time given by the corporation, although often asked for by Hanchett; and that he was allowed to remain in possession of the property by the mere sufferance of the corporation defendant herein.    The testimony, in its entirety and weight, clearly shows that Hanchett, whatever rights, claims, demands, or interest, if any, he may have against the defendant Silver Peak Mines, has no such interest in the Silver Peak property as entitles him to make any defense against the foreclosure of Blair's mortgage.    In other words, whatever interest or claim he may have in the property is— as alleged in the bill of complaint herein—"subsequent to and subject to the lien of this complainant's mortgage."    Entertaining these views, it would serve no useful purpose to discuss, consider, or decide the question whether the counsel for Hanchett were misled by any conversations had with complainant's counsel, or have offered a good and reasonable excuse for their failure to appear and argue this case at the time and place it was regularly set down for trial.    They have had the opportunity on this hearing to as fully discuss the testimony as they would have had if they had been present at the time

the case was tried. It would be idle and useless to grant a rehearing when it is not affirmatively shown that if the rehearing was had any other judgment or decree could be entered, upon the pleadings and testimony of record herein, than was entered by this court on the trial hereof. The petition for rehearing is denied.