**UNITED STATES of America**

**v.**

**Henry Earl PALMER, Registrar of Voters of East Feliciana Parish, Louisiana, and the State of Louisiana.**

Civ. A. No. 2962.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

June 18, 1964.

Louis C. LaCour, U. S. Atty., L. Howard McCurdy, Jr., Asst. U. S. Atty., Eastern Dist. of Louisiana, New Orleans, La., John Doar, Frank M. Dunbaugh, Louis M. Kauder, Peter M. Korican, Attys., Dept. of Justice, Washington, D. C., for plaintiff.

Leon A. Picou, Jr., St. Francisville, La., for Registrar of Voters.

Jack P. F. Gremillion, Atty. Gen., of Louisiana, Harry J. Kron, Jr., Asst. Atty. Gen. of Louisiana, Baton Rouge, La., for State of Louisiana.

WEST, District Judge.

This suit was filed by the United States of America on March 26, 1964, against Henry Earl Palmer, Registrar of Voters of East Feliciana Parish, Louisiana, and the State of Louisiana, alleging various instances and kinds of discrimination against Negroes in voter registration in that Parish. In petitioner's prayer, the Court is requested to make a finding that the acts and practices complained of constitute deprivation of rights secured by 42 U.S.C.A. § 1971(a) and that those deprivations were and are pursuant to a pattern of practice of racial discrimination. The Court is further requested to enjoin defendants from in any way discriminating against Negroes in conducting voter registration in East Feliciana Parish, and also from:

"a. Failing and refusing to receive and pass upon applications for registration to vote in East Feliciana Parish;"

Petitioner, in its suit, demands additional relief, including an order directed to the respondents, ordering them to place upon the registration rolls all persons who, according to petitioner's standards, are qualified to register and vote. The office of Registrar of Voters in East Feliciana Parish has been closed since November 7, 1963, and no applications for registration have been received since that time. The office has been closed since that time to white and colored applicants alike. As a result of this clo-

sure, petitioner, in addition to praying for relief on the merits of its case, also asks this Court to issue a temporary restraining order, without hearing, and after hearing, a preliminary injunction, enjoining and restraining respondents from:

"a. Engaging in any act which would delay, prevent, hinder or discourage Negro citizens in East Feliciana Parish, Louisiana, on account of their race or color, from applying for, and becoming registered voters;

"b. Failing or refusing to conduct registration and to receive and process expeditiously applications for registration to vote in East Feliciana Parish, Louisiana;

"c. Failing and refusing to keep the office of the Registrar of Voters for East Feliciana Parish open for the registration of voters in accordance with the requirements of 18 L.R.S. 72."

This Court refused to issue a temporary restraining order without notice, and a hearing was then held on April 27, 1964, on petitioner's application for the issuance of a preliminary injunction. After hearing arguments of counsel, both sides were given ten days within which to file briefs, after which the matter was taken under submission. Now, after carefully considering the arguments and briefs of counsel, and after considering the law applicable hereto, it is concluded that petitioner's application or motion for the issuance of a preliminary injunction must be partially granted and partially denied for the following reasons.

 It is well established that the United States Constitution does not confer upon anyone the right of suffrage. The only right to vote protected by the Fifteenth Amendment to the United States Constitution is the right to vote as established by the laws and constitution of the individual states. McPherson v. Blacker, 146 U.S. 1, 13 S.Ct. 3, 36 L.Ed. 869; United States v. Reese, 92 U.S. 214, 23 L.Ed. 563; Minor v. Happersett, 21 Wall. 162, 88 U.S. 162, 22 L.Ed. 627. The Fifteenth Amendment merely forbids the states to deny a citizen the right to vote on account of race, color, or previous condition of servitude. But, of course, there can be no question as to the state's exclusive right to establish voter requirements, provided the requirements thus established do not discriminate against any citizen because of his race, color, or previous condition of servitude. Pursuant to this authority and power, vested solely and entirely in the several states, the State of Louisiana has established voter requirements. LSA–R.S. 18:1 et seq.; Article VIII, LSA–Constitution. In addition to the usual requirements of good moral character, residence, ability to read and write, establishment of identity, and understanding of the duties and obligations of citizenship, Louisiana law also provides for a constitutional interpretation test for voter applicants which requires that the applicant for registration be able to read any clause in the Constitution of Louisiana or of the United States, and give a reasonable interpretation thereof. Louisiana Constitution Article VIII, Section 1 (d); LSA–RS. 18:35. Louisiana law also provides for a citizenship test. This requires that Registrars of Voters propound an objective test of citizenship under a republican form of government. Louisiana Constitution Article VIII, Section 18; LSA–R.S. 18:191. While the constitutional interpretation test has been a part of Louisiana law for many years, the citizenship test requirement was provided by amendment to the Constitution and Statutes of Louisiana only in November of 1962. The type and form of application to be used by voter applicants is provided by LSA–R.S. 18:32, and, under the provisions of LSA–R.S. 18:12, each registrar of voters must comply with and apply all laws of the State of Louisiana relative to the registration of voters under the pain of criminal punishment in the event of his fail-

ure to do so. LSA–R.S. 18:72 sets forth the days and hours during which the registrar's office is to remain open for business.

Respondent, Henry Earl Palmer, Registrar of Voters in East Feliciana Parish, contends that he has abided by all of these laws, and that he did use these tests as required by law until November 7, 1963. On that date, the decision in the case of United States of America v. State of Louisiana, et al., D.C., 225 F. Supp. 353, was rendered by a divided three-judge Federal Court in the Eastern District of Louisiana. The majority opinion in that case held that Louisiana's constitutional interpretation test was unconstitutional. Consequently, an injunction was issued by that Court enjoining and restraining all registrars in the State of Louisiana from using the constitutional interpretation test as a requirement for voter registration. Actually, as that Court properly determined, the Legislature and the people had, by statutory and constitutional amendments, in November, 1962, provided for the use of an objective citizenship test as a substitute for the constitutional interpretation test as a requirement for voter registration because, in light of recent developments, it was apparently expected that the Federal Courts would strike down the constitutional interpretation test in spite of the fact that the very same law providing for the constitutional interpretation test had previously been held to be constitutional. Trudeau v. Barnes, 65 F.2d 563 (CA 5 1933). But the majority of the three-judge court hearing the case of United States of America v. Louisiana, supra, would not give the State of Louisiana an opportunity to employ the citizenship test even though it did not, and indeed it could not, find such a test to be unconstitutional. Instead, after issuing the injunction enjoining the State of Louisiana and the Registrar of Voters for the Parish of East Feliciana from using the constitutional interpretation test as a voter requirement, it then proceeded, in the same judgment, to enjoin the Registrar of Voters of East Feliciana Parish, along with the Registrars of Voters of twenty other parishes, from using the citizenship test, a test which the Court specifically stated they were *not* holding to be unconstitutional. They enjoined its use "until the discriminatory effects of the test (constitutional interpretation test) has been vitiated to the satisfaction of the Court."

Thus, in one fell swoop, the Court struck down one of the voter requirement tests as unconstitutional, and, though not finding it unconstitutional, rendered, by injunction, the other test inoperative. Thus was the Registrar of Voters in East Feliciana Parish suddenly put in a position where, should he abide by the Federal Court's injunction, he would violate the provisions of Article VIII, Section 18 of the Louisiana Constitution, Louisiana Revised Statutes 18:191, and Louisiana Revised Statutes 18:12, all of which are still valid, existing state laws. And should he abide by existing state laws, he would then subject himself to contempt proceedings by the Federal Court for violation of its injunction. In addition to this dilemma, the Registrar suddenly found himself without any usable criteria, fixed by state law, by which he could test the qualifications of voters. So what did he do? He closed the office to *all* applicants, both white and colored, until such time as the proper authorities established legal standards by which the qualification of voter applicants could be tested and determined. This closure was effected on November 7, 1963. This suit followed on March 26, 1964. The hearing held before this Court on April 27, 1964, was not concerned with the merits of petitioner's complaint, but only with the question of whether or not a preliminary injunction should issue herein. It is only with this question that we are now concerned.

Petitioner moves for a preliminary injunction enjoining respondents from, among other things:

"a. Engaging in any act which would delay, prevent, hinder or

discourage Negro citizens in East Feliciana Parish, Louisiana, on account of their race or color, from applying for, and becoming, registered voters;"

■ There is, of course, merit to this part of petitioner's application. There is no question but what these respondents have no legal right to in any way delay, prevent, hinder, or discourage Negro citizens in East Feliciana Parish *solely on account of their race or color* from applying to register as voters in that Parish. Respondents should, and of course, will be enjoined now from engaging in any such discriminatory practices.

But the remaining portions of petitioner's application raises entirely different questions. Petitioner asks that respondents be enjoined from:

"(b) Failing or refusing to conduct registration and to receive and process expeditiously applications for registration to vote in East Feliciana Parish, Louisiana;

"(c) Failing and refusing to keep the office of the Registrar of Voters for East Feliciana Parish open for the registration of voters in accordance with the requirements of 18 L. R.S. 72."

The office of the Registrar has been closed since November 7, 1963, not only to Negro applicants, but to *all* applicants. Thus, there is no discrimination in that sense. It has been closed because, under the existing state of affairs, as created by the decision and order of the Court in United States of America v. State of Louisiana, supra, the hands of the Registrar of Voters in East Feliciana Parish are tied insofar as legally registering voters is concerned. In the case of United States of America v. Leonard C. Duke, 332 F.2d 759 (CA 5, May 22, 1964), a case involving alleged voter discrimination, the Court said that when it is found that Negroes have been discriminated against when they attempted to register to vote, the Court will order that they must be allowed to register on the same basis as the white voters already on the rolls. But in the present case, that is impossible because, by Court injunction, the Registrar of Voters is now restrained and enjoined from using the test or tests that he used to test the qualifications of the white voters presently on the rolls. In Duke it was said:

"The only effective relief here is by applying the principle of freezing the registration standards that were in effect when the great majority of the white citizens were registered. * * * [T]he disenfranchised class must be given a reasonable opportunity to get their names on the registration rolls on the same basis as was applied to the 5300 white voters who are now registered in Panola County."

But in the present case, this cannot be done. The Court has previously enjoined the use of the registration standards that were in effect when the great majority of the white citizens of East Feliciana Parish were registered. We cannot, at this stage of the proceedings, assume that the voters presently on the rolls were registered without having successfully passed the tests prescribed by state law. Such a conclusion can only be reached after a hearing on the merits. Consequently, since at this stage of the proceedings, we must accord the Registrar of Voters the presumption that he, in the performance of his official duties, has obeyed the law, and since, in view of the injunction previously issued against him enjoining him from now using the standards which he used to qualify voters presently on the rolls, the freezing principle employed in Duke obviously cannot be employed here. And furthermore, since this Court sincerely believes that it is completely outside the ambit of authority of a Federal Court to prescribe the tests which must be used by a state registrar of voters to determine the

qualification of voter applicants, the Registrar of Voters for the Parish of East Feliciana is, at this time, left without a means of conducting the business of his office. It is the State of Louisiana and not the Federal Court that must establish voter qualifications. It is suggested that the proper procedure might be for petitioner to apply to the same three-judge Court that heard the case of the United States of America v. State of Louisiana, supra, to set aside the injunction restraining the Registrar of Voters of East Feliciana Parish from using the valid citizenship test in order that he, the Registrar, might legally conduct the affairs of his office. That Court retained jurisdiction in that case for the purpose of issuing such further orders as it might, from time to time, deem necessary and proper. It seems that such an order is now both necessary and proper.

■ But in any event, this Court must deny petitioner's motion for preliminary injunction insofar as it seeks to force the Registrar of Voters of East Feliciana Parish to receive and process voter applications, and insofar as it seeks to force him to open his office for the registration of voters in accordance with LSA–R.S. 18:72. If that state statute is being violated, it is a matter of concern for the State of Louisiana, and not for the Federal Court. To force the Registrar of Voters to open his office now would be to compel him to do a vain and useless thing. He could open his office, but he would have no way to legally register voters. If discrimination in the past has occurred as alleged by petitioners, such must be reckoned with upon a hearing of the merits of this case. At this stage of the proceedings, however, petitioner's application for the issuance of a preliminary injunction must be only partially granted and partially denied in accordance herewith. In view of the conclusion reached herein, no further comment is required on petitioner's motion for "Further Specific Relief" filed herein on June 12, 1964. An appropriate order will be entered accordingly.