Walter R. HEARNE and Stanley E. Whitman, Plaintiffs,

v.

Robert E. SMYLIE, Governor of the State of Idaho, et al., Defendants.

No. 3815.

United States District Court
D. Idaho, S. D.

Jan. 10, 1964.

---

36. See generally Annotation, 29 A.L.R.2d 1199 (1953).

37. See, e. g., Hanus v. K. M. B. Construction Co., 392 Pa. 307, 140 A.2d 454 (1958).

McDevitt & McDevitt, H. J. McDevitt, Pocatello, Idaho, Anthony A. Nelson, Boise, Idaho, for plaintiffs.

Allan G. Shepard, Atty. Gen., of Idaho, Keith Schofield, Asst. Atty. Gen., Boise, Idaho, for defendants Allan G. Shepard, Atty. Gen., Arnold Williams, Secretary of State, Joe Williams, State Auditor, Marjorie Moon, State Treasurer.

Martin V. Huff, Asst. Prosecuting Atty., of Ada County, Boise, Idaho, for County Commissioners & Auditor of Ada County.

Hugh Maguire, Pros. Atty., Bannock County, Pocatello, Idaho, for the County Commissioners and Auditor of Bannock County.

Elam, Burke, Jeppesen & Evans, Blaine F. Evans, Boise, Idaho, for Governor Robert E. Smylie.

Before KOELSCH, Circuit Judge, and MATHES and FRED M. TAYLOR, District Judges.

PER CURIAM:

Plaintiff Hearne, a resident of Pocatello and a qualified voter in Bannock County, Idaho, and plaintiff Whitman, a resident of Boise and a qualified voter in Ada County, Idaho, commenced this action on November 1, 1962, seeking a declaratory judgment and equitable relief against the Governor, the Attorney General, and various other State and county officials of the State of Idaho. In keeping with the mandate of 28 U.S.C. § 2281, a three-judge court was convened. Thereafter, issues were joined and litigated. The case is now before us for decision following a trial upon the merits.

The declaratory relief which plaintiffs ask embraces a determination and declaration that certain of the provisions

of the Idaho Constitution and statutes, providing for the apportionment and manner of election of State legislators, contravene the Fourteenth Amendment to the United States Constitution, by operating to deny to plaintiffs, and others similarly situated, due process of law and the equal protection of the laws. [See: Idaho Const. Art. III, §§ 2, 4, 5; and Idaho Code § 67–203, as amended, and its predecessors.]

Corollary to this adjudication, the Court is asked to declare the present Idaho Legislature to be illegally constituted and illegitimate, and to enjoin all further election of members of the Legislature under the present system.

Plaintiffs invoke Federal jurisdiction upon the following grounds:

"The jurisdiction of this Court and the Plaintiffs' right to bring this action are found under the Civil Rights Act, 42 USC Sec. 1983 and 1988. The Court has additional jurisdiction under 28 USC Sec. 1343. Relief hereunder is further sought pursuant to the Federal Declaratory Judgment Act, 28 USC Sec. 2201 and 2202."

■ As Mr. Justice Holmes observed for a unanimous Court in The Fair v. Kohler Die Co., 228 U.S. 22, 33 S.Ct. 410, 57 L.Ed. 716 (1913): "Of course the party who brings a suit is master to decide what law he will rely upon and therefore does determine whether he will bring a 'suit arising under' the * * * [Constitution or laws or treaties] of the United States * * *." [228 U.S. at 25, 33 S.Ct. at 411, 57 L.Ed. 716]. And since Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L. Ed. 939 (1946)—at least—it appears to have been settled that the mere assertion by a plaintiff of any claim of violation of any provision of the Constitution or laws of the United States is sufficient to invoke the jurisdiction of the Federal courts. Plaintiffs' action then plainly falls within the general "federal-question" jurisdiction of this Court [28 U. S.C. § 1331] and, State action being challenged [cf. Monroe v. Pape, 365 U.

S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)], Federal jurisdiction conferred by 28 U.S.C. § 1343(3) is properly invoked under the Civil Rights Act [see 42 U.S.C. § 1983]. The conclusion is inescapable, therefore, that this Court does have general jurisdiction of the subject matter of plaintiffs' claims. [See Baker v. Carr, 369 U.S. 186, 198–204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).]

■ It is well to recall in passing, however, that the Declaratory Judgment Act [28 U.S.C. §§ 2201, 2202] does not confer any added jurisdiction upon the Federal courts, but merely enlarges "the range of remedies available" in cases involving subject matter within the scope of Federal jurisdiction elsewhere conferred [Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)]. Stated more specifically, the Declaratory Judgment Act "merely gave the federal courts competence to make a declaration of rights even though no decree of enforcement be immediately asked. It merely permitted a freer movement of the federal courts within the recognized confines of the scope of equity. The Declaratory Judgment Act 'only provided a new form of procedure for the adjudication of rights in conformity' with 'established equitable principles.'" [Colegrove v. Green, 328 U.S. 549, 551–552, 66 S.Ct. 1198, 1199, 90 L.Ed. 1432 (1946).]

■ It has been held, moreover, that plaintiffs *qua* individuals have standing to sue—to bring this action in this Court. [Baker v. Carr, supra, 369 U.S. at 204–208, 82 S.Ct. at 703–705, 7 L.Ed.2d 663.] As Mr. Justice Brennan declared for the majority of the Court in Baker: "It would not be necessary to decide whether * * * [plaintiffs'] allegations of impairment of their votes by the * * [existing] apportionment will, ultimately, entitle them to any relief, in order to hold that they have standing to seek it." [369 U.S. at 208, 82 S.Ct. at 705, 7 L.Ed. 2d 663.]

■ Furthermore, it has been held that claims such as plaintiffs here assert

do not present a "political question", but tender a justiciable "controversy" within the judicial power conferred by Article III, § 2 of the United States Constitution. [Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963); Baker v. Carr, supra, 369 U.S. at 208–237, 250, 266, 82 S.Ct. at 705–721, 727, 737, 7 L.Ed.2d 663.

Bound by precedent to consider the case at bar as one tendering a justiciable controversy within the subject-matter jurisdiction of this Court and one presented by plaintiffs who have standing to sue, we look once more to Baker v. Carr for additional guidance, but find that the Court there did not decide what, if any, judicial relief should or could be granted upon the claims there asserted. [See 369 U.S. at 195–198, 237, 241, 265–266, 82 S.Ct. at 698–700, 720–721, 722–723, 736–737, 7 L.Ed.2d 663.]

Reaching the merits of the case at bar, as Baker v. Carr requires this Court to do, we confront first plaintiffs' prayer for a declaratory judgment. For more than half a century, Article III of the Idaho Constitution has provided, *inter alia*:

"§ 2. *Membership of house and senate.*—The senate shall consist of one (1) member from each county. The legislature may fix the number of members of the house of representatives at not more than three (3) times as many representatives as there are senators. The senators and representatives shall be chosen by the electors of the respective counties or districts into which the state may, from time to time, be divided by law.

\* \* \* \* \* \*

"§ 4. *Apportionment of legislature.*—The members of the first legislature shall be apportioned to the several legislative districts of the state in proportion to the number of votes polled at the last general election for delegate to congress, and thereafter to be apportioned as may be provided by law: provided, each county shall be entitled to one representative.

"§ 5. *Senatorial and representative districts.*—A senatorial or representative district, when more than one county shall constitute the same, shall be composed of contiguous counties, and no county shall be divided in creating such districts."

Section 67–203 of the Idaho Code implements these provisions of the State Constitution.

Plaintiffs assert that the quoted sections of Idaho's Constitution and § 67–203 of the Idaho Code "as applied to the present facts of the State of Idaho and the 1960 census, establishes an arbitrary and capricious apportionment of representatives in the Senate and House without reference to any logical or reasonable formula whatever, resulting in gross under representation in both houses of the larger urban areas and gross over representation in both houses of the sparsely populated areas", with the result, say plaintiffs, that the challenged provisions of the Idaho Constitution and statutes operate to deny them due process of law and the equal protection of the laws, in defiance of the Fourteenth Amendment to the Federal Constitution.

It is well settled that even where jurisdiction exists to adjudicate a controversy and award relief authorized by the Federal Declaratory Judgment Act, whether to entertain the action and grant relief is a matter within the discretion of the Court. [Public Affairs Associates, Inc. v. Rickover, 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962); Eccles v. Peoples Bank, 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784 (1933); Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 462, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945); Coffman v. Breeze Corp., 323 U.S. 316, 324, 65 S.Ct. 298, 89 L.Ed. 264 (1945).]

We have considered the briefs of counsel, as well as such "evidence" as was adduced upon the "trial" of this cause, and have concluded that the only proper course is for this Court to exercise its

discretion against making any declaratory judgment. Several reasons impel us to this conclusion.

First, we lay aside plaintiffs' point that Idaho's system of legislative apportionment violates the "due process" clause of the Fourteenth Amendment. The argument in support of this contention completely escapes us and, in our opinion, does not merit discussion.

So we treat with plaintiffs' contention that Idaho's apportionment method defies the mandate of the Fourteenth Amendment's "equal protection" clause. As Mr. Justice Van Devanter wrote for a unanimous Court in Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911):

> "The rules by which this contention [violation of equal protection] must be tested, as is shown by repeated decisions of this court, are these: 1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify * * * but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." [220 U.S. at 78–79, 31 S.Ct. at 340, 55 L.Ed. 369; see also, Morey v. Doud, 354 U.S. 457, 463–466, 77 S. Ct. 1344, 1 L.Ed.2d 1485 (1957).]

▮ Recently the Court has restated these rules by declaring succinctly that a "statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it". [McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).] Corollary to this rule, of course, is the principle that a "statute [constitutionally] valid when enacted may become invalid by change in the conditions to which it is applied". [Nashville, C. & St. L. R. Co. v. Walters, 294 U.S. 405, 415, 55 S.Ct. 486, 488, 79 L.Ed. 949 (1935).]

▮ As we read relevant precedent, there are yet other rules applicable to statutes which, on their face, do not offend the "equal protection" clause of the Fourteenth Amendment. For example, where it must be concluded from all surrounding circumstances that the State Legislature, in enacting the challenged legislation which is constitutionally valid on its face, did so with the legislative intent to work a discrimination [see McFarland v. American Sugar Co., 241 U. S. 79, 86–87, 36 S.Ct. 498, 60 L.Ed. 899 (1916); Cotting v. Kansas City Stock Yards Co., 183 U.S. 79, 112, 114–115, 22 S.Ct. 30, 46 L.Ed. 92 (1901)], or where, regardless of legislative intent, it must be concluded from all surrounding circumstances that the law under attack is applied or enforced with the purpose or intended result of working a discrimination, then such State legislation will be held, in the current phrase coined by Mr. Justice Douglas in Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L. Ed. 1655 (1942), to result in "invidious discrimination" violating the "equal protection" clause. [See Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); cf.: Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944); Yick Wo v. Hopkins, 118 U.S. 356, 373–374, 6 S.Ct. 1064, 30 L.Ed. 220 (1885); see also, Norvell v. Illinois, 373 U.S. 420, 425, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963); Ferguson v. Skrupa, 372 U.S. 726, 732, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).]

Facing the myriad geographic, demographic, economic, social and political

forces that combine to make Idaho the great State it is, we must confess lack of both omnicompetence and prescience, which it appears to us would be necessary, to make a judicial appraisal and declaration that the State's time-old method of apportionment is irrational—beyond the bounds of reasonableness—when measured against what we understand to be the content of the mandate of the "equal protection" clause of the Fourteenth Amendment.

Some of the innumerable imponderables in any scheme of legislative apportionment, if not based upon a mere mathematical formula of "one man—one vote", were catalogued by Mr. Justice Frankfurter upon dissenting in Baker v. Carr, supra, as follows:

"Apportionment, by its character, is a subject of extraordinary complexity, involving—even after the fundamental theoretical issues concerning what is to be represented in a representative legislature have been fought out or compromised—considerations of geography, demography, electoral convenience, economic and social cohesions or divergencies among particular local groups, communications, the practical effects of political institutions like the lobby and the city machine, ancient traditions and ties of settled usage, respect for proven incumbents of long experience and senior status, mathematical mechanics, censuses compiling relevant data, and a host of others." [369 U.S. at 323, 82 S.Ct. at 767, 7 L.Ed.2d 663.]

Neither are we able to declare this a case of "invidious discrimination"; for it would assuredly be nothing more or less than sheer judicial guesswork to say what is invalid without being able at the same time to declare to what extent it is invalid—i. e., what would be a valid system of legislative reapportionment for Idaho.

If the equal protection clause does require the State to adopt a system of legislative apportionment based upon the "one man—one vote" formula [cf.: Gray v. Sanders, supra, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821; MacDougall v. Green, 335 U.S. 281, 69 S.Ct. 1,

93 L.Ed. 3 (1948)], requires in other words the nearest practicable relationship between population and legislative representation—then the standard is a purely mathematical one; and it seems unnecessary to observe that there is seldom rational excuse for departing more than *de minimis* from any standard of mathematical exactness.

If, *per contra*, the relationship between legislative representation and population involves other than a mathematical standard, then we are without precedent or wisdom to declare how inexact it can constitutionally be.

Simply to declare the present apportionment system invalid, as plaintiffs urge us to do, thereby leaving the State presumably with no *de jure* legislature, and no system of selecting one, might well effect a temporary denial to Idaho of "a Republican Form of Government", in violation of the express guarantee of Article IV, § 4 of the United States Constitution. [See Idaho Admission Bill, Preamble, 26 Stat. 215 (1890); cf.: Taylor & Marshall v. Beckham (No. 1), 178 U.S. 548, 579–580, 20 S.Ct. 890, 44 L.Ed. 1187 (1900); In re Duncan, 139 U.S. 449, 461–462, 11 S.Ct. 573, 35 L.Ed. 219 (1891); Minor v. Happersett, 21 Wall. 162, 88 U.S. 162, 175–176, 22 L. Ed. 627 (1874); see also, Baker v. Carr, supra, 369 U.S. at 222–223, n. 48, 82 S. Ct. at 712–713, 7 L.Ed.2d 663.] Whether or not that would be the result is a "political question", which long-established precedent forbids this Court to decide [see: Ohio ex rel. Bryant v. Akron Metropolitan Park District, 281 U.S. 74, 50 S.Ct. 228, 74 L.Ed. 710 (1930); Marshall v. Dye, 231 U.S. 250, 256–257, 34 S.Ct. 92, 58 L.Ed. 206 (1913); Pacific States Telephone Co. v. Oregon, 223 U.S. 118, 149–151, 32 S.Ct. 224, 56 L.Ed. 377 (1912); Luther v. Borden, 7 How. 1, 48 U.S. 1, 12 L.Ed. 581 (1849)], just as the courts are indeed forbidden by judicial precedent to decide whether the Fourteenth Amendment was ever ratified in the manner required by the Constitution [see: Coleman v. Miller, 307 U.S. 433, 448–449, 59 S.Ct. 972, 83 L.Ed. 1385 (1939); Leser v. Garnett, 258 U.S. 130, 42 S.Ct. 217, 66 L.Ed. 505 (1922); Harwood v. Wentworth, 162 U.S. 547,

16 S.Ct. 890, 40 L.Ed. 1069 (1896); Field v. Clark, 143 U.S. 649, 12 S.Ct. 495, 36 L.Ed. 294 (1892); cf. Baker v. Carr, supra, 369 U.S. at 214–215, 82 S.Ct. 691, 7 L.Ed.2d 663; see, also: Lawrence, Undoing a Fraud, U. S. News & World Report, Aug. 12, 1963, pp. 82–83; Does the Fourteenth Amendment Incorporate the Bill of Rights?—Fairman, The Original Understanding, and Morrison, The Judicial Interpretation, 2 Stanford L.Rev. 5, 140 (1949)].

Since the commencement of this action, the Idaho Legislature in 1963 reapportioned itself on the basis of the 1960 Census. This reapportionment followed a decision of the Idaho Supreme Court in a State-court reapportionment suit. [See Caesar v. Williams, 84 Idaho 254, 371 P.2d 241 (1962).]

In Caesar v. Williams, supra, plaintiff asked the Idaho court, in light of the 1960 Federal Census, to declare that the Idaho apportionment statute [Idaho Code § 67–203], then last amended in 1951, violated the "equal protection" clause of the Idaho Constitution, which provides:

*"Political power inherent in the people.*—All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform or abolish the same whenever they may deem it necessary; and no special privileges or immunities shall ever be granted that may not be altered, revoked, or repealed by the legislature." [Idaho Constitution, Art. I, § 2.]

The Idaho Supreme Court referred decision on the validity under Idaho's Constitution of her then effective legislative apportionment statute, saying:

"Until such time as the legislature has had ample opportunity to fully examine the impact of the 1960 Census on the apportionment of representatives throughout this State, in the light of Idaho Const. Art. III, §§ 2, 4 and 5, we cannot say that the 1951 Act is unconstitutional as having failed to grant representative rights of the citizenry of this State afforded by the Constitution." [371 P.2d at 249.]

We infer that the recent 1963 apportionment statute, under attack at bar [Idaho Code § 67–203, as amended by 1963 Idaho Sess. Laws, ch. 15, at 149], was enacted in response to the above-quoted suggestion of Idaho's Supreme Court. And, interestingly enough, it was conceded by counsel at the bar upon oral argument here that, since the passage of the 1963 statute, no Idaho citizen has as yet seen fit to return to the Idaho Supreme Court to seek a determination as to the constitutionality of the new legislative apportionment statute under Idaho's Constitution.

Recalling the oft-repeated admonition that this Court should refrain from declarations as to Federal constitutional questions whenever permissible [see: Staub v. City of Baxley, 355 U.S. 313, 330, 78 S.Ct. 277, 2 L.Ed. 2d 302 (1958); Rice v. Sioux City Memorial Park Cemetery, Inc., 349 U.S. 70, 74–75, 75 S.Ct. 614, 99 L.Ed. 897 (1955); Rescue Army v. Municipal Court, 331 U.S. 549, 569, 576–577, 584, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947); Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 341, 56 S.Ct. 466, 80 L.Ed. 688 (1936)], the circumstance that every claim asserted by plaintiffs in the case at bar can be adequately tested and adjudicated in a State court suit, points to the wisdom of our decision that this Court should decline to interfere in the State process unless and until forced to do so [see Brillhart v. Excess Ins. Co., 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); cf.: Matthews v. Handley, 361 U.S. 127, 80 S.Ct. 256, 4 L.Ed.2d 180 (1959), affirming 179 F.Supp. 470 (N. D.Ind.1959); Remmey v. Smith, 342 U. S. 916, 72 S.Ct. 368, 96 L.Ed. 685 (1952), affirming 102 F.Supp. 708 (E.D.Pa. 1951); Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); see also, McNeese v. Board of Education, 373 U.S. 668, 673, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963)].

The considerations stated, then, prompt us to hold that, even though this Court does have jurisdiction over the subject matter of plaintiffs' claim at bar for declaratory relief, the action should be dismissed as to that claim, solely upon

the ground that, in the proper "exercise of the Court's discretion, relief by way of declaratory judgment should be denied, without consideration of the merits". [See: Great Lakes Dredge & Dock Co. v. Huffman, supra, 319 U.S. 293, 301–302, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943); Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 272–273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).].

 Turning now to plaintiffs' claim for equitable relief, it is well to recall at the outset that "the general powers of Federal courts when sitting as courts of equity * * * can be exerted only in cases otherwise within the jurisdiction of those courts as defined by Congress". [Briggs v. United Shoe Machinery Co., 239 U.S. 48, 50, 36 S.Ct. 6, 7, 60 L.Ed. 138 (1915); Rees v. Watertown, 19 Wall. 107, 122, 86 U.S. 107, 122, 22 L.Ed. 72 (1873).] Also that the equity jurisdiction of the Federal District Courts, and of their predecessor circuit courts, as it has existed since conferred by § 11 of the Judiciary Act of 1789 [1 Stat. 78], has never been held to exceed in scope that which the High Court of Chancery in England possessed in 1789 [Atlas Life Ins. Co. v. W. I. Southern, Inc., 306 U.S. 563, 568, 59 S. Ct. 657, 83 L.Ed. 987 (1939); Mississippi Mills v. Cohn, 150 U.S. 202, 205, 14 S.Ct. 75, 37 L.Ed. 1052 (1893); Payne v. Hook, 7 Wall. 425, 430, 74 U.S. 425, 430, 19 L.Ed. 260 (1868); Pennsylvania v. Wheeling & Belmont Bridge Co., 18 How. 460, 59 U.S. 460, 15 L.Ed. 497 (1855)].

 As the Court explained in Atlas Life Ins. Co. v. W. I. Southern, Inc., supra:

"The 'jurisdiction' thus conferred on the federal courts to entertain suits in equity is an authority to administer in equity suits the principles of the system of judicial remedies which had been devised and was being administered by the English Court of Chancery at the time of the separation of the two countries." [306 U.S. at 568, 59 S.Ct. at 659–660, 83 L.Ed. 987.].

This is why Federal courts of equity have always eschewed jurisdiction of the probate of wills and administration of estates [Markham v. Allen, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946); Gaines v. Chew, 2 How. 619, 645, 43 U.S. 619, 645, 11 L.Ed. 402 (1844)], of divorce matters [Barber v. Barber, 21 How. 582, 584, 62 U.S. 582, 584, 16 L.Ed. 226; cf. Ohio ex rel. Popovici v. Agler, 280 U.S. 379, 383, 50 S.Ct. 154, 74 L.Ed. 489 (1930)], of cases involving the enforcement of charitable bequests [Fontain v. Ravenel, 17 How. 369, 392–393, 58 U.S. 369, 392–393, 15 L.Ed. 80 (1855)], and of determinations as to custody [cf. Barry v. Mercein, 5 How. 103, 119–120, 46 U.S. 103, 119–120, 12 L.Ed. 70 (1847)] and support [cf. Albanese v. Richter, 3 Cir., 161 F.2d 688, 689 (1947), cert. denied, 332 U.S. 782, 68 S.Ct. 49, 92 L.Ed. 365 (1947)].

It seems no overstatement to say that in 1789, the High Court of Chancery would have been greatly shocked at the suggestion that equity might afford injunctive relief under the facts at bar [See: Giles v. Harris, 189 U.S. 475, 486, 23 S.Ct. 639, 47 L.Ed. 909 (1903); In re Sawyer, 124 U.S. 200, 221, 8 S.Ct. 482, 31 L.Ed. 402 (1888); Georgia v. Stanton, 6 Wall. 50, 73 U.S. 50, 18 L. Ed. 721 (1867); cf.: Attorney General v. Earl of Clarendon, 17 Ves.Jr. 491, 498, 34 Eng.Rep. 190, 193 (Ch. 1810); Nabob of the Carnatic v. East India Company, 1 Ves.Jr. 371, 393, 30 Eng.Rep. 391, 402 (Ch. 1791); Penn v. Lord Baltimore, 1 Ves. 444, 446–447, 27 Eng.Rep. 1132, 1133 (Ch. 1750); and see Pound, Cases on Equitable Protection of Personalty and of Social and Political Relations, ch. IV c, 31–74 (1915), reprinted in Chafee & Pound, Cases on Equitable Relief Against Torts (1933).]

 Where Federal equity jurisdiction is invoked, therefore, it is the duty of the Court to determine at the outset "whether in any given instance a suit of which a district court has jurisdiction as a federal court is an appropriate one for the exercise of the extraordinary powers of a court of equity". [Atlas Life Ins. Co. v. W. I. Southern, Inc., supra, 306 U.S. at 570, 59 S.Ct. at 661, 83 L.Ed. 987; see: Alabama Public Service Comm. v. Southern Ry. Co., 341 U.S. 341, 345, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); Meredith v. City of Winter Haven, 320 U.S. 228, 234–235, 64 S.Ct. 7,

88 L.Ed. 9 (1943); Di Giovanni v. Camden Fire Ins. Ass'n., 296 U.S. 64, 69, 56 S.Ct. 1, 80 L.Ed. 47 (1935); Twist v. Prairie Oil Co., 274 U.S. 684, 690–691, 47 S.Ct. 755, 71 L.Ed. 1297 (1927); Massachusetts State Grange v. Benton, 272 U.S. 525, 528, 47 S.Ct. 189, 71 L.Ed. 387 (1926); Reynes v. Dumont, 130 U.S. 354, 395, 9 S.Ct. 486, 32 L.Ed. 934 (1889); Payne v. Hook, supra, 7 Wall. at 430, 74 U.S. at 430, 19 L.Ed. 260.]

■ If the case does not warrant exercise of the court's equitable powers, this fact, "if obvious, may and should be objected to by the court of its own motion". [Matthews v. Rodgers, 284 U.S. 521, 524, 52 S.Ct. 217, 219, 76 L.Ed. 447 (1932); Singer Sewing Machine Co. of New Jersey v. Benedict, 229 U.S. 481, 484, 33 S.Ct. 942, 57 L.Ed. 1288 (1913); Lewis v. Cocks, 23 Wall. 466, 470, 90 U.S. 466, 470, 23 L.Ed. 70 (1874).]

Plaintiffs ask us to prohibit by injunction the holding of any further elections for members of the Idaho Legislature until a system of legislative apportionment is adopted which will assure plaintiffs "equal protection of the laws" —i. e., what they conceive to be their proportionate share of political influence.

We were admonished long ago that: "There is no power, the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issue of an injunction." [Truly v. Wanzer, 5 How. 141, 142, 46 U.S. 140, 142, 12 L.Ed. 88 (1847).]

In South v. Peters, 339 U.S. 276, 70 S.Ct. 641, 94 L.Ed. 834 (1950), the Court declared that: "Federal courts consistently refuse to exercise their equity powers in cases posing political issues arising from a state's geographical distribution of electoral strength among its political subdivisions." [339 U.S. at 277, 70 S.Ct. at 642, 94 L.Ed. 834, cf. Gray v. Sanders, supra, 372 U.S. at 373, 381, 383, 83 S.Ct. at 804, 805, 809–810, 9 L.Ed.2d 821.]

Centuries old is the rule that: "A court of equity ought to do justice completely and not by halves." [Camp v. Boyd, 229 U.S. 530, 551, 33 S.Ct. 785, 793, 57 L.Ed. 1317 (1913).] As was observed in treating with plaintiffs' prayer for a declaratory judgment, this Court lacks the wisdom and perspicacity to adjudge either that Idaho's present legislative apportionment plan is beyond the bounds of reasonableness, or even what would be a more rational plan, all factors considered; and more especially so in view of the declaration in MacDougall v. Green, 335 U.S. 281, 69 S.Ct. 1, 93 L.Ed. 3 (1948), that:

"It would be strange indeed, and doctrinaire, for this Court, applying such broad constitutional concepts as due process and equal protection of the laws, to deny a State the power to assure a proper diffusion of political initiative as between its thinly populated counties and those having concentrated masses, in view of the fact that the latter have practical opportunities for exerting their political weight at the polls not available to the former. The Constitution— a practical instrument of government—makes no such demands on the States." [335 U.S. at 284, 69 S.Ct. at 2, 93 L.Ed. 3; and see: Colegrove v. Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432 (1946); Wood v. Broom, 287 U.S. 1, 8, 53 S.Ct. 1, 77 L.Ed. 131 (1932); Walton v. House of Representatives, 265 U.S. 487, 490, 44 S.Ct. 628, 68 L.Ed. 1115 (1924).]

Our inability, for reasons already stated, "to do justice completely, and not by halves" in this case is emphasized by what Mr. Justice Douglas so pointedly wrote for the Court in A. F. of L. v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873 (1946):

"Where a federal court of equity is asked to interfere with the enforcement of state laws, it should do so only 'to prevent irreparable injury which is clear and imminent

* * *.'" [327 U.S. at 593, 66 S. Ct. at 766, 90 L.Ed. 873.]

There is nothing in the record here which even tends to persuade us that any claimed injury to plaintiffs is "irreparable" or "clear" or "imminent".

To borrow from Mr. Justice Rutledge's concurring opinion in MacDougall v. Green, supra:

> "Even if we assume that * * * [plaintiffs'] constitutional rights have been violated, the questions arise whether, in those circumstances, the equity arm of the federal courts can now be extended to give effective relief; and whether the relief, if given, might not do more harm than good, might not indeed either disrupt the * * * [next Idaho] election altogether or disenfranchise more persons than have been disenfranchised by the application of the questioned * * * [Idaho] procedures." [335 U.S. at 285–286, 69 S.Ct. at 3, 93 L.Ed. 3.]

In the same case, Mr. Justice Douglas declared upon dissenting that:

> "The equity court, moreover, must always be alert in the exercise of its discretion to make sure that its decree will not be a futile and ineffective thing." [Id. 335 U.S. at 290, 69 S.Ct. at 5, 93 L.Ed. 3.]

Almost since "time knoweth not to the contrary", it has been a settled maxim of equity jurisprudence that a court of equity will not issue an unenforceable decree of injunction, mandatory or prohibitory. As Mr. Justice Holmes put it with characteristic conciseness three generations ago: "In determining whether a court of equity can take jurisdiction, one of the first questions is what it can do to enforce any order that it may make." [Giles v. Harris, supra, 189 U.S. at 487, 23 S.Ct. at 642, 47 L.Ed. 909; see also Mills v. Green, 159 U.S. 651, 16 S.Ct. 132, 40 L. Ed. 293 (1895).]

In the view of one observer, "it taxes the imagination to conjure a vision of the marshals breathing down the necks of the members of the [Idaho Legislature] * * * while they parrot the requisite number of 'ayes', or the prosecution for contempt of legislators who voted 'nay' on the district court's apportionment bill". Lucas, Of Ducks and Drakes: Judicial Relief in Re-apportionment Cases, 38 Notre Dame Law. 401, 409 (1963).

This calls to mind the fact that the members of the Idaho Legislature have not even been made parties to this action. Plaintiffs nonetheless urge that, if this Court will only grant the decree they seek, our orders will not require enforcement; that they will enforce themselves, so to speak. Plaintiffs' hope of course is that, if this Court will only declare the present system of legislative apportionment void under the equal protection clause of the Fourteenth Amendment, then the present Idaho Legislature—at that time *ex necessitate* only a *de facto* body by virtue of our declaration—would presumably "do something about it", and at least remove in part what plaintiffs say are the intolerable defects of the present. Thus plaintiffs in effect argue that this Court should attempt to "bluff" or "spur" the Idaho Legislature into action; that we should issue a "left-handed" injunction whereby the Court would attempt to accomplish indirectly what it could not possibly bring about directly. [See Chafee, Congressional Reapportionment, 42 Harv.L.Rev. 1015, 1019 (1929).]

Manifestly, this Court cannot control the State-law effects of any decree it might enter. So we are powerless, ourselves, to establish a particular legislature as the proper governing body of the State of Idaho. But that is not all. As stated earlier, were we to grant the relief plaintiffs ask and thereby deprive Idaho of a *de jure* Legislature, surely we would at the same time probably deprive the people of Idaho, at least temporarily, of "a Republican Form of Government" guaranteed to them by Article IV, § 4, of the Federal Constitution. Thus, while attempting to vindicate what plaintiffs conceive to be their rights un-

der the "equal protection" clause of the Fourteenth Amendment, this Court might work a violation by the Federal Government of the "guarantee clause" of Article IV, § 4.

We should not willingly so stultify ourselves, or so prostitute the power and process of this Court. Beyond the age-old policy against advisory opinions, and *a fortiori* advisory judgments [see Muskrat v. United States, 219 U.S. 346, 361–362, 31 S.Ct. 250, 55 L.Ed. 246 (1911); cf. Letter From Chief Justice Jay to Secretary of State Jefferson, August 8, 1793, in Hart & Wechsler, The Federal Courts and The Federal System 77 (1953)], we would echo the warning of Mr. Justice Frankfurter that "there is nothing judicially more unseemly nor more self-defeating than for * * * [a] Court to make *in terrorem* pronouncements, to indulge in merely empty rhetoric, sounding a word of promise to the ear, sure to be disappointing to the hope". [Baker v. Carr, supra, 369 U.S. at 270, 82 S.Ct. at 739, 7 L.Ed.2d 663.]

Since plaintiffs have failed, for the reasons discussed, to state a claim for which this Court can grant equitable relief [see: Matthews v. Rodgers, supra, 284 U.S. at 524–525, 52 S.Ct. at 219, 76 L.Ed. 447; Twist v. Prairie Oil & Gas Co., supra, 274 U.S. at 689–691, 47 S. Ct. at 757–758, 71 L.Ed. 1297; see also Colegrove v. Green, supra, 328 U.S. at 565, n. 2, 66 S.Ct. at 1208, 90 L.Ed. 1432], "and the defect in the bill is incapable of remedy by amendment, its dismissal should be directed" [Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 52–53, 58 S.Ct. 459, 465, 82 L.Ed. 638 (1938); Mast, Foos & Co. v. Stover Mfg. Co., 177 U.S. 485, 494–495, 20 S. Ct. 708, 44 L.Ed. 856 (1900)].

The foregoing shall constitute findings of fact and conclusions of law, as required by Fed.R.Civ.P. 52(a), and the Clerk will enter judgment [id. 58(1)] dismissing the action without costs to any party: (1) as to the claim for declaratory relief, solely upon the ground that, in the proper exercise of the Court's discretion, relief by way of declaratory judgment should be denied, without consideration of the merits [Great Lakes Dredge & Dock Co. v. Huffman, supra, 319 U.S. at 301–302, 63 S.Ct. at 1074, 87 L.Ed. 1407, Maryland Casualty Co. v. Pacific Coal & Oil Co., supra, 312 U. S. at 272–273, 61 S.Ct. at 511–512, 85 L.Ed. 826 and see Colegrove v. Green, supra, 328 U.S. at 551–552, 66 S.Ct. at 1199, 90 L.Ed. 1432]; and (2), as to the claim for injunctive relief, upon the ground of "want of equity"—that is, failure to allege or prove a claim for which effective equitable relief can be granted. [Matthews v. Handley, supra, 361 U.S. 127, 80 S.Ct. 256, 4 L.Ed.2d 180; Radford v. Gary, 352 U.S. 991, 77 S.Ct. 559, 1 L.Ed.2d 540 (1957); Remmey v. Smith, supra, 342 U.S. 916, 72 S. Ct. 368, 96 L.Ed. 685.]

KOELSCH Circuit Judge (dissenting).

The court declines to meet the basic issue in this case because of a professed lack of ability to comprehend and appraise the many and complex factors that may or do enter into the problem of the equitable representation of voters in the Legislature of the State of Idaho. Additionally the court does not entertain the petition because no method for correcting the asserted injustice is apparent.

Neither of these reasons, in my estimation, justifies a judicial disposition that does not come to grips with a problem touching such a fundamental right as that of legislative representation. I believe here it is particularly true that " * * * we act in these matters not by authority of our competence but by force of our commissions." Jackson, J., in West Virginia State Board of Education v. Barnette, 319 U.S. 624, 640, 63 S. Ct. 1178, 1186, 87 L.Ed. 1628 (1943). More importantly, lessons learned in other cases indicate that the difficulty of a task does not *per se* put the task beyond the institutional competence of the judiciary. See Douglas, J., concurring in Baker v. Carr, 369 U.S. 186, 245–250, 82 S.Ct. 691, 724–727, 7 L.Ed.2d 663

(1962) and Clark, J., concurring Id. 369 U.S. at 259–262, 82 S.Ct. at 732–733, 734, 7 L.Ed.2d 663. See also Comment, Baker v. Carr and Legislative Apportionments: A Problem of Standards, 72 Yale L.J. 968, (1963).

In Baker v. Carr, the Supreme Court went far toward answering the position of the majority: "Judicial standards under the Equal Protection Clause are well developed and familiar, and it has been open to courts since the enactment of the Fourteenth Amendment to determine, if on the particular facts they must, that a discrimination reflects *no* policy, but simply arbitrary and capricious action." 369 U.S. at 226, 82 S. Ct. at 715, 7 L.Ed.2d 663.

I therefore dissent.