**UNITED STATES of America, Plaintiff,**

**v.**

**GEORGIA POWER COMPANY, a corporation, et al., Defendants,**

**Charles KING, et al., Plaintiffs,**

**v.**

**GEORGIA POWER COMPANY, et al., Defendants,**

**Willie C. MOREMAN, Plaintiff,**

**v.**

**GEORGIA POWER COMPANY, et al., Defendants.**

**Civ. A. Nos. 12355, 11723 and 12185.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 22, 1981.

Prentiss Ivory Davis, Michael C. Murphy, Charles W. Whitney, Charles A. Edwards, Atlanta, Ga., Jack Greenberg, William L. Robinson, New York City, Larry Ward, Dept. of Justice, Washington, D. C., for plaintiff.

John H. Ruffin, Jr., Augusta, Ga., and James B. Coppess and Donald R. Livingston, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

The United States of America has brought this matter before the court seeking enforcement of the Amended and Final Decree ("the Decree") entered in this case by the court on January 31, 1974. At issue is a dispute between the United States and Georgia Power Company ("the Company") over Georgia Power's refusal to grant Annie Doris Baker's requests to transfer to a General Clerk Class B position. One of the two disputed requests was for a position on

the 21st floor of the Company's general office building. The United States contends that the Company specifically sought to keep blacks from positions on the 21st floor, which housed a reception area and offices for some of the Company's high level executives.

The case is before the court on Georgia Power's motion to dismiss and on the motions of both parties for summary judgment.

The heart of the Decree in this case is a prohibition against discrimination in employment on the basis of race or color by Georgia Power. The Decree also provides certain classes of plaintiffs remedial relief from the effects of the Company's past discrimination. Ms. Baker is an affected class member under the Decree because she is a black who was discriminatorily denied employment by the Company in 1971.

The Decree provides for this court's continuing jurisdiction. Further, Section IX of the Decree establishes a complaint resolution procedure for disputes arising in the implementation of the Decree.

Ms. Baker was first employed by the Company on December 28, 1976. In the summer of 1978, Ms. Baker notified the United States that she felt she was being discriminated against by the Company by reason of the Company's failure to grant her a requested transfer to a new department. In February, 1979, the Company terminated Ms. Baker for divulging confidential personnel information to the United States in her notice of the discriminatory employment practices which she perceived.[1] By the time the United States was notified of Ms. Baker's termination she had hired private counsel.

The United States investigated Ms. Baker's allegations and pursued a resolution of her complaints with the Company.[2] While these efforts were in progress, Ms. Baker took independent steps on her own behalf. In the Spring of 1979, Ms. Baker filed a complaint under Section IX of the Decree and also initiated charges of discrimination with the EEOC.

Ms. Baker obtained a "right to sue letter" from the EEOC and suit was brought in this court, Civil Action No. 79–1952A (Evans, J.) (filed Oct. 19, 1979), pursuant to Title VII, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. The Company was granted summary judgment on the issue of Ms. Baker's discharge. After trial, the court ruled in the Company's favor on the issue of failure to promote or transfer.

Georgia Power seeks dismissal of this action on the grounds that the action is barred by the *res judicata* effect of Ms. Baker's private suit.

The four essential elements of federal *res judicata* are:

(1) two cases,

(2) one of which has proceeded to judgment,

(3) raising identical claims,

(4) by the same parties or persons in privity with those parties.

*Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955); 1B J. Moore's Federal Practice ¶ 0.405[1]. In the instant case, requirements three and four are not met.

Turning first to requirement three, it is apparent from the face of the Decree that

---

1. Apparently, the United States does not dispute the termination, but only the transfer denials.

2. This investigation seems to have begun only in Spring, 1979. There was more than a five month lapse between Ms. Baker's notice to the United States and the filing of her complaint under the Decree. Thus, the precise terms of the Decree were not followed, since it specifies:

    If an employee believes that his individual rights have been adversely affected by an incorrect interpretation or application of the terms of this Decree, he shall file notice of such complaint by letter or on the above mentioned form within 30 days after he knows of the decision, act, or practice which he questions or within 30 days of the time when in the exercise of reasonable diligence, he should have known of such decision, act, or practice (e.g., 30 days after his return from sickness or a vacation during which the incident occurred) with the Manager of the Employee Relations Department.

its provisions, though similar, are not identical to those of Title VII, 42 U.S.C. § 2000e *et seq.* The claims asserted by the United States in seeking enforcement of the Decree are not tested against the same standards as those raised by a private litigant under Title VII. The doctrine of *res judicata* is applicable only when the cause of action in the second suit is identical to the cause of action in the first. *International Association of Machinist and Aerospace Workers v. Nix*, 512 F.2d 125, 131 (5th Cir. 1975). Ms. Baker could not even independently raise the claims asserted by the United States under the Decree. *See* Decree, Section IX. The causes of action in the two suits are not the same.

Requirement four, identity of the parties, can be satisfied if the second suit is brought either by the identical parties as the first suit, or by persons in privity with those parties. The court notes that Civil Action 79–1952A and the instant matter are brought by different parties. Therefore, requirement four could be met only if the court were to find that privity existed between Ms. Baker and the United States, the two plaintiffs.

In support of its contention that *res judicata* precludes the present action, Georgia Power cites, among other cases, *Southwest Airlines Co. v. Texas International Airlines*, 546 F.2d 84 (5th Cir. 1977). The thorough and thoughtful analysis of federal *res judicata* principles presented there, *Id.* at 94–101, is too lengthy to repeat in full. It is sufficient to state that this court adopts the analysis of the Fifth Circuit in *Southwest* concerning the requirement of privity of the parties. In particular the court notes

its agreement that "privity" denotes a legal conclusion rather than a judgmental process. *Id.* at 95.[3] Thus, the inquiry as to privity should be whether Ms. Baker may be deemed to be in a relationship sufficiently close to the United States to justify application of the *res judicata* bar in light of the policies *res judicata* is meant to promote.

In *Southwest*, the Fifth Circuit identified three classes of relationships sufficiently close to justify preclusion of a second suit: first, a non-party who has succeeded to a party's interest in property; second, a non-party who controlled the original suit; and third, a non-party whose interests were represented adequately by a party in the original suit. *Id.*

In this light, the Company has argued that the United States actually controlled or participated in Ms. Baker's private suit. *See Dudley v. Smith*, 504 F.2d 979 (5th Cir. 1974). On the evidence presented, the court finds that the United States, though obviously aware of Ms. Baker's private suit, did not control or participate in it.[4]

The Company further contended that since Isabel Gates Webster, the attorney who represented Ms. Baker in Civil Action C79–1952A, also represented the class of private plaintiffs in the instant consolidated action, that attorney Webster either raised, or had the authority to raise, all rights on behalf of Ms. Baker under the Decree. See Decree Section IX, (Counsel for private plaintiffs shall have same rights as counsel for United States if member of private plaintiff class believes himself adversely affected.) It is true that attorney Webster represented the class of private plaintiffs in

---

**3.** The court quoted Professor Vestal:

Thus, the term privity in itself does not state a reason for either including or excluding a person from the binding effect of a prior judgment, but rather it represents a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion.

Vestal, *Preclusion/Res Judicata Variables: Parties*, 50 Iowa L.Rev. 27 (1964).
546 F.2d at 95, n.30.

**4.** However, the court does not understand United States' assertion that "until we were informed of the opinion in *Baker*, we were not aware that the matter of the filling of the General Clerk B vacancies at issue here had even been placed before that court." (Plaintiff's reply Brief, Oct. 16, 1981) Letters concerning settlement talks submitted as exhibits by the United States itself show that the United States was informed of the private *Baker* suit at least three months and probably even longer before the ruling in *Baker* on April 30, 1981, by Judge Evans.

the original consolidated action. However, Ms. Baker was not and is not a member of the class of private plaintiffs. Accordingly, in representing Ms. Baker attorney Webster did not have the same rights as counsel for the United States under Section IX of the Decree.

The Company's central argument, however, was that even if attorney Webster did not have precisely the same rights as counsel for the United States, the interests of Ms. Baker are identical with those of the United States in this particular matter. Thus, the Company concluded, the two parties are sufficiently close to bar any rehearing of Ms. Baker's discrimination claim. The court disagrees.

In its analysis of suits where the plaintiffs' relationships are sufficiently close to support a *res judicata* bar, the court in *Southwest* carefully distinguished whether the two suits were brought by private parties or the government and if the latter, then whether the government's suit was heard first or second. In *Southwest,* the government's suit—by the City of Dallas—came first. This fact was central to the court's conclusion that under the circumstances present there the earlier suit precluded relitigation. *Id.* at 100. *See* Restatement (Second) of Judgments § 85 (Tent. Draft No. 2, 1975).

In line with the analysis by the Fifth Circuit, this court believes the essential characteristics of the *res judicata* issue here are: the private plaintiff sued first, pursuant to Title VII, while the United States sues second and seeks enforcement of a prior judgment of this court. Determinative of the analysis are the sequence of the two suits and that the Government's cause of action arises from an injunctive decree.

It is fundamental that equity will not issue a decree it cannot enforce. *Hearne v. Smylie,* 225 F.Supp. 645, 655 (D.Idaho), *rev.'d per curiam,* 378 U.S. 563, 84 S.Ct. 1917, 12 L.Ed.2d 1036 (1964). The actions of the private plaintiff in Civil Action 79–1952A cannot strip this court of its jurisdiction to make independent inquiry into compliance with its Decree. *See Sanders v.* *Monsanto Co.,* F.Supp. 25 EPD ¶ 31,260 (S.D.Tex.1981).

In *United States v. East Baton Rouge Parish School Board,* 594 F.2d 56 (5th Cir. 1979), the United States brought suit under the Voting Rights Act, attacking a multimember award system of electing school board members. The District Court applied a *res judicata* bar based on a prior suit brought by private plaintiffs. In reversing, the Fifth Circuit noted that:

> [T]he District Court's conclusion is directly contrary to the general principal law of the United States will not be barred with independent litigation by the failure of a private plaintiff. (cites omitted) This principal is based primarily upon the recognition that the United States has an interest in enforcing federal law that is independent of any claims of private citizens. In the present context the Supreme Court has characterized this as "the highest public interest in the due observance of all constitutional guarantees." *United States v. Raines,* 362 U.S. 17 [80 S.Ct. 519, 4 L.Ed.2d 524] (1960). Also, any contrary rule would impose an onerous and extensive burden upon the United States to monitor private litigation in order to insure the possible mishandling of a claim by a private plaintiff could be corrected by intervention. (footnote omitted).

594 F.2d at 58.

The logic of these considerations is stronger in the present context, where the United States seeks to enforce a prior Decree to which it is a party and to which the private plaintiff is not, than where the United States simply sues on a statutory cause of action. It is apparent that Ms. Baker and the United States fits none of the relationships sufficiently close to preclude this litigation on *res judicata* grounds. The defendant's motion to dismiss is DENIED.

The court, the executive branch of the federal government and Georgia Power each have limited resources. Conservation of limited judicial and private resources, as well as the finality of judgments, which

generates public respect for the courts, are two of the important policies served by the principle of *res judicata*. 546 F.2d at 94. Although *res judicata* does not apply here, the court is not unconcerned with the possibility of a senseless underminding of the policies which *res judicata* promotes if there develops a regular pattern of private suits under Title VII followed by Government actions for enforcement of the Decree in this case.

Strict compliance with the time limits set out in Section IX of the Decree should alleviate much of the risk of such a pattern developing.[5] In this regard, the court notes once again that different *res judicata* issues would be raised if the Government's action had been filed before Ms. Baker's action. Georgia Power is not powerless in determining which action is decided first. See Decree, Section IX (the U.S. and/or Company shall have a right to bring matters to the attention of this court for resolution.)

Turning to the motions for summary judgment, it is elementary that on such motions the moving party bears the burden of showing both the absence of a genuine issue as to any material fact, and that judgment is warranted as a matter of law. Also, the evidence on the motion must be construed in favor of the party opposing the motion, and the opposing party must receive the benefit of all favorable inferences that be drawn from the evidence. The statements of the parties in their Statements of Material Facts As To Which There Is No Genuine Issue, together with the discovery documents submitted to the court, reveal sharp, irreconcilable disagreements as to genuine issues of material fact. Taking the facts most favorably to the non-moving party on each motion for summary judgment, the moving party on each motion has failed to show that it is entitled to relief as a matter of law.

Accordingly, both the plaintiffs and the defendants motions for summary judgment are DENIED.

5. See note 2, *supra*.